# Bole, Assignee, *v.* New Hampshire Fire Ins. Co., Appellant.

159   53
173   57
_____
159        53
35 SC '620

159    53
f40SC'626

*Contract—Construction—Doubtful words—Surrounding circumstances.*

Words in a contract which have no fixed technical meaning should be taken in their natural and obvious sense. A provision capable of two or more meanings should be construed most strongly against him whose undertaking it is, and the circumstances surrounding the parties when the contract was made and affecting the subject to which it relates form a sort of context, that may be resorted to in doubtful cases to aid in arriving at the meaning of the contract.

*Fire insurance—Covenants—Operation of factory.*

A policy of fire insurance on a manufacturing establishment provided that the policy should be void if the factory should " cease to be operated for more than ten consecutive days." The policy was a renewal policy on a manufacturing establishment, which at the time of the renewal was in the hands of an assignee for creditors. On or about the day on which the old policy expired, the insurance broker through whom it had been obtained visited the premises to see about its renewal. The machinery was not then in operation and had not been for some days, but the premises were actually occupied by the foreman, who was engaged in putting together and making sale of engines and other articles belonging to the assigned estate. The broker renewed the policies for an amount then agreed upon and the premiums were paid. After being occupied in this way for several months, a fire occurred. *Held,* that the factory had not ceased to be operated within the meaning of the policy, and that the assignee was entitled to recover the value of the property insured.

Argued Oct. 24, 1893. Appeal, No. 100, Oct. T., 1893, by defendant, from judgment of C. P. No. 2, Allegheny Co., Oct. T., 1892, No. 268, on verdict for plaintiffs, John Bole and George M. Bole, assignees of Hugh M. Bole. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and THOMPSON, JJ.

Assumpsit on policy of fire insurance.

There were ten cases tried together on similar policies of insurance against different fire insurance companies. All of the cases involved the same facts.

The jury returned the following special verdict:

" We find for the plaintiffs in each of the above cases in the sum of eight hundred dollars without interest, subject to the opinion of the court on the question of law reserved, to wit:

" We find that the plaintiffs were the assignees of Hugh M. Bole under a deed of voluntary assignment for the benefit of creditors, dated April 14, 1891. That Hugh M. Bole, before the assignment, had policies of insurance on the property in each of the defendant companies, (except the Hamburg-Bremen Fire Insurance Co., of Hamburg, Germany, and The New Hampshire Fire Insurance Co., of Manchester, N. H.,) which were in force at the time of the assignment and expired on the 24th day of October, 1891, which had been placed through John Kirkpatrick, an insurance broker. That said Kirkpatrick, knowing that the policies were about to expire, visited the premises to see about a renewing of the insurance; that said Kirkpatrick and one of the plaintiffs at the buildings and premises determined the amount to be insured on different portions of the property; he received the premiums therefor and placed the insurance in the different defendant companies, and from them received out of the premiums paid by the plaintiffs his commissions; that on the day of the visit of said Kirkpatrick to the premises the machine shop in question was not in operation, and at the time of issuing the policies and for ten days or more prior thereto the said shop was not in operation ; that the plaintiffs as assignees had kept the shops in partial operation, finishing up unfinished engines and other machines, but had, from the 14th day of October, 1891, ceased to run the engines until the 13th day of November, 1891, and from that date until November 18, 1891, operated the shop, running the engine, etc., up to November 18, 1891, when work finally ceased, except as follows : The foreman of the shops remained in charge, keeping the place cleaned up and selling stock and material on hand, such as a lathe, a steam engine, etc., which had previously been manufactured, scrap iron, etc., and when the said machinery was sold he put in order for removal from the shop by oiling, painting and adding to the steam engine the oil cups and parts already prepared but which, while the engine was in stock, were kept separate from it. He also attended to the delivery of the property sold, and when he needed help in this work or in delivery he was furnished with the necessary assistance. A steam engine was delivered on March 31, 1892, otherwise the shop had not been operated since November 18, 1891. The fire causing the loss happened in the afternoon of April 1, 1892.

But for greater certainty we make the policy sued on and in evidence in each case, with its description of property and terms, a part of this verdict. And especially the portions thereof stipulating that the policy shall be void in case of a manufacturing establishment ceasing to be operated.

" If, on this finding of facts, the court be of the opinion that the plaintiffs are entitled to recover, judgment to be entered on the several verdicts in favor of the plaintiffs. If the court be of the opinion that the law is with the defendants, or any of them, judgment to be entered in favor of such defendant non obstante veredicto."

The terms of the policy are quoted in the opinion of the Supreme Court below.

The court entered judgment for plaintiffs on the verdict, in an opinion by EWING, P. J. Defendant appealed.

*Error assigned* was entry of judgment.

*J. S. Ferguson, E. G. Ferguson* with him, for appellant, cited: City Planing Mill Co. v. Merchants' etc. Ins. Co., 72 Mich. 654; Snyder v. Firemen's Fund Ins. Co., 78 Iowa, 147; Halpin v. Phœnix Ins. Co., 118 N. Y. 165; Halpin v. Ætna Ins. Co., 120 N. Y. 70; Pottsville Mut. F. Ins. Co. v. Fromm, 110 Pa. 347; McClure v. Watertown F. Ins. Co., 90 Pa. 277; Harrison v. City F. Ins. Co., 91 Mass. 231; Keith v. Quincy Mut. F. Ins. Co., 92 Mass. 228; Corrigan v. Connecticut F. Ins. Co., 122 Mass. 298; England v. Manchester F. Ins. Co., 81 Wis. 583; Ins. Co. v. Leathers, 20 W. N. 107.

*R. A. Balph, James Balph* with him, for appellee, cited: Ins. Co. v. Erb, 112 Pa. 149; Allemannia Ins. Co. v. Stevenson, Craig & Co., 10 Cent. R. 65; American Fire Ins. Co. v. Cotton Mfg. Co., 125 Ill. 135; Ridge v. Ins. Co., 9 Lea (Tenn.) 507.

OPINION BY MR. JUSTICE WILLIAMS, December 30, 1893:

Hugh M. Bole, a manufacturer in the city of Pittsburgh, made a deed of assignment for the benefit of creditors in April, 1891. The plaintiffs are the assignees. At the time of the assignment H. M. Bole held a number of policies of insurance upon his building, machinery and materials, which did not ex-

pire until the 24th day of October following.   On or about the
day on which the policies expired the broker through whom
they were obtained visited the premises to see about their re-
newal.   The machinery was not then in operation and had not
been for some days, but the premises were actually occupied by
the foreman who was engaged in putting together, and making
sale of, engines and other articles belonging to the assigned
estate.   He renewed the policies for an amount then agreed
upon and the premiums were paid.   In the policy sued on, and
several others, the following provision appeared.   " This entire
policy, unless otherwise provided by agreement indorsed hereon
or added hereto shall be void . . . . if the subject of insurance
be a manufacturing establishment and it be operated in whole
or in part later than ten o'clock at night, or if it cease to be
operated for more than ten consecutive days."   The defence
rested mainly on the facts that the subject of insurance was a
manufacturing establishment and that it had not been operated
for manufacturing purposes for more than ten days before the
happening of the fire.

This appeal depends on the meaning of the words " cease to
be operated for more than ten days," found in the provision we
have quoted from the policy.   In determining the meaning of
these words we must remember that words having no fixed
technical meaning should be taken in their natural and obvious
sense ; that a provision capable of two or more meanings should
be construed most strongly against him whose undertaking it
is ; and that the circumstances surrounding the parties when the
contract was made, and affecting the subject to which it relates,
form a sort of context that may be resorted to in doubtful cases
to aid in arriving at the meaning of the contract.

In Philadelphia Tool Company v. The Assurance Company,
132 Pa. 236, the policy contained a provision that it should be
void unless " the assured was the sole and unconditional owner
of the property insured."   He was in fact a lessee.   But it ap-
peared that the policy was issued without a written application
and on the knowledge of the agent.   We construed this provi-
sion in the light of the circumstances surrounding the issuing
of the policy and permitted the insured to recover for the lease-
hold interest which was actually held by him.

In Krug v. German Fire Insurance Co., 147 Pa. 272, a can-

ning establishment at the close of the season was insured as a place of storage ; and the policy provided that it should be used for storage only. A fire was built under the boiler to blow the water out of the pipes and flues, and on the night of the same day the premises were destroyed by fire. The building of the fire to blow out the pipes was held not to be the use of the premises for any other purpose than storage. It was to complete the preparation necessary for devoting the establishment to that particular purpose, and was therefore not a violation of the condition in the policy.

In Doud v. Citizens Insurance Co., 141 Pa. 47, and in Roe v. Dwelling House Ins. Co., 149 Pa. 94, the policies sued on contained a provision that they should be void if the premises should be vacated without the consent of the insurer. In both cases the fire occurred while the houses were unoccupied, between the outgoing of one tenant and the incoming of another. In Roe's case the tenant went out on the twenty-fourth of March, although his lease did not expire till the first of April. Another tenant was to move in on the first of April. The fire occurred on the twenty-eighth of March. We held that, as to the owner, the premises had not been vacated within the meaning of the policy. The property was under lease, but some time might naturally elapse between the outgoing and incoming of tenants, which might vary with circumstances over which the insured had no control.

A similar disregard of the mere letter in aid of the real purpose of the contract was made in Dougherty v. The Pacific Mutual Life Insurance Company, 154 Pa. 385. The policy provided that the company should not be liable if the insured was injured or killed while on a railroad bridge, trestle or roadbed. He was killed on the roadbed of a railroad at a public crossing while passing along a highway. We held the company to be liable.

Similar in principle are the cases of Pickett v. The Insurance Co., 144 Pa. 79, and Humphreys v. Benefit Association, 139 Pa. 264. In each case the letter was disregarded in order to reach a proper interpretation of a stipulation in the policy.

In the case before us when the policy was issued the proprietor of the manufactory had failed. His property was in the hands of his assignees, who were seeking insurance. The ma-

chinery was not in operation at the time and had not been for days.   Unsold manufactured goods and unused materials were scattered through the factory, which was really in use as a store and salesroom in charge of the foreman.   It was not vacant or unoccupied, but the fires were out and the wheels were still. Operations at a factory ordinarily include both the manufacture and sale of the articles produced.   The manufacturing processes of the insolvent were discontinued, but the sale of goods on hand, by the assignees, was in progress and the factory was occupied regularly for this purpose.   This branch of operations was necessarily conducted in the factory where the articles were.   The apparent risk was not increased but diminished by the closing of the machine shop, so long as the occupancy of the premises as a salesroom continued.   It continued down to the time of the fire.   In the language of the special verdict rendered in this case, " The foreman of the shops remained in charge, keeping the place cleaned up and selling stock and material on hand; . . . . he also attended to the delivery of the property sold, and when he needed help in this work or in delivery he was furnished with the necessary assistance." He actually delivered a steam engine to a purchaser on the 31st of March, 1892, and the fire took place on the afternoon of the following day.   We agree with the learned judge of the court below that upon these facts the factory had not ceased to be operated within the meaning of the policy, and that judgment on the reserved question was properly entered in favor of the plaintiff.

The judgment is therefore affirmed.