Blocker *v.* Aetna Casualty and Surety Company,
Appellant.

Argued March 11, 1974, and reargued September 13, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*James K. Thomas*, with him *James K. Thomas, II,* and *Metzger, Hafer, Keefer, Thomas & Wood*, for appellant.

*Richard C. Angino*, with him *Hurwitz, Klein, Benjamin & Angino*, for appellee.

OPINION BY VAN DER VOORT, J., January 8, 1975:

By this appeal and after reargument, our court is called upon once again to review the issue of the "stacking" or multiplication of insurance coverages. The plaintiff-appellee was a guest passenger in a car operated by an individual insured by the defendant-appellant. The car was involved in a collision with an uninsured motorist, and the plaintiff was injured and suffered damages in excess of $20,000. In addition to the insured car which was involved in the collision, the defendant insured a second car owned by the host driver, which car was not involved in the accident. Both cars were insured under the same policy and both were covered by uninsured motorist insurance in the

amount of $10,000. The host driver paid a separate premium to the defendant for each car described in the policy for uninsured motorist coverage.

The plaintiff has sought to recover the amount of $20,000 for her damages, in effect, "stacking" the uninsured motorist coverages for the two cars owned by the host driver and allegedly covered by the defendant's policy. The defendant maintains that such "stacking" is improper. Pursuant to the terms of the policy, the plaintiff sought arbitration of this dispute under the provisions of the Pennsylvania Arbitration Act of April 25, 1927, P.L. 381, No. 248, 5 P.S. §161-181. One arbitrator was selected by each party and the two arbitrators then jointly selected a third arbitrator. The arbitrators, after receipt of testimony, briefs and arguments by both parties, ruled unanimously that plaintiff-appellee was entitled to recover $20,000, the total of the two coverages discussed above. Again pursuant to the Arbitration Act of 1927, the defendant-appellant sought, and was granted an appeal by the Court of Common Pleas of Dauphin County. That court, composed of a five-judge panel sitting en banc, after receipt of briefs and hearing of arguments, unanimously held in favor of plaintiff-appellee in the same amount and under the same dual coverage as had been awarded by the arbitrators.

In the consideration of the present appeal, it is pertinent to note that our court has been aided by the assistance of able arguments by all counsel, excellent briefs from both parties, and a thoroughly reasoned and well written opinion by the court in Dauphin County. In addition, we are confronted by a plethora of legal precedents from not only the courts of our own Commonwealth, but from appellate courts in many other jurisdictions.

The single issue for our determination will of course be resolved by our analysis of the terms and conditions of the insurance policy issued by the appellant. This analysis of an insurance policy, like the interpretation of any other written contract, is a question of law for the court. *Bole v. New Hampshire Fire Insurance Company*, 159 Pa. 53, 28 A. 205 (1893). The policy must be read in its entirety; it should be construed according to the plain meaning of the words used, so as to avoid ambiguity while at the same time giving effect to all of its provisions. *Masters v. Celina Mutual Insurance Company*, 209 Pa. Superior Ct. 111, 224 A. 2d 774 (1966); *Galvin v. Occidental Life Insurance Company*, 206 Pa. Superior Ct. 61, 64, 211 A. 2d 120, 122 (1965). If it is determined that the language of a policy prepared by an insurer is either ambiguous, obscure, uncertain or susceptible to more than one construction, we must construe that language most strongly against the insurer and accept the construction most favorable to the insured. *Patton v. Patton*, 413 Pa. 566, 573, 198 A. 2d 578, 582 (1964); *Flynn v. Allstate Insurance Company*, 50 D. & C. 2d 195, 199-200 (1970). Of course, we may not rewrite an insurance contract or construe clear and unambiguous language to mean other than what it says. *Pennsylvania Manufacturers' Association Insurance Company v. Aetna Casualty and Surety Insurance Company*, 426 Pa. 453, 233 A. 2d 548 (1967); *Holliday v. St. Paul Mercury Indemnity Company*, 153 Pa. Superior Ct. 59, 33 A. 2d 449 (1943). In light of the above, our inquiry narrows to the real issue of whether the policy, clearly, and without ambiguity, precludes the double coverage sought by the plaintiff-appellee. The appellant and appellee have both cited the following policy language in support of their arguments:

(1) *The "Limits of Liability" Clause.*

"The limits of liability for Uninsured Motorists Coverage stated in the declarations as applicable to 'each person' is the limit of the Company's liability for all damages . . . because of bodily injury sustained by one person as the result of any one accident. . . ."

(2) *General Provisions—Condition 4.*

"When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each. . . ."

The "declaration" sheet of the Policy provides, in the column entitled "limits of liability", that the amount of coverage on each car is ten thousand ($10,000) dollars for each person and twenty thousand ($20,000) dollars for each accident.

In the relatively recent case of *Nationwide Mutual Insurance Company v. Ealy*, 221 Pa. Superior Ct. 138, 289 A. 2d 113 (1972), our Court dealt with a similar appeal involving "stacking" of uninsured motorist coverage. In a thorough opinion in that case, Judge JACOBS pointed out that the insurers' policy provision which "expressly excluded from uninsured motorist coverage the other vehicles owned by Ealy" was not in contravention of Pennsylvania's uninsured motorist law, Act of August 14, 1963, P. L. 909, as amended, 40 P.S. §2000(a). The *Ealy* case followed the cases of *Harleysville Mutual Casualty Company v. Blumling*, 429 Pa. 389, 241 A. 2d 112 (1968) and *Bankes v. State Farm Mutual Automobile Insurance Company*, 216 Pa. Superior Ct. 162, 264 A. 2d 197 (1970), in which our courts had voided other insurance policy limitations of liability provisions as repugnant to the aforementioned Act.

The appellee claims that unlike the policy in *Ealy*, the limits of liability clause of the appellant's policy does not expressly exclude from uninsured motorists' coverage the other vehicle owned by the host driver.

We could not discover such an express exclusion in any other part of the policy. Further, the policy, as quoted above, does contain a provision which requires that the terms of the policy be applicable separately to each of two or more cars covered by the policy. Thus, the appellee argues, as it did before the arbitrators and the court below, that the ten thousand ($10,000) dollar policy coverage limits on each car should be applied separately to allow the recovery of twenty thousand ($20,000) dollars. As was discussed supra, the appellee cites several cases which have allowed stacking in this situation. The appellant likewise cites numerous cases in support of its position that the policy must be construed to allow the recovery of only ten thousand ($10,000) dollars.

Mindful of all of the above, we have concluded that the policy in question is clearly susceptible to two reasonably arguable interpretations. The large volume of cases, in this jurisdiction and others, cited by both parties to this appeal in support of their directly contradictory arguments, lends great weight to this conclusion. In this situation, in which it cannot be maintained that ambiguity is non-existent, precedent requires that we must resolve the ambiguity in favor of the insured, and against the insurance company which prepared the policy. See *Patton v. Patton, supra; Flynn v. Allstate Insurance Company, supra.*

In *Harker v. Pennsylvania Manufacturers' Association Insurance Company,* 219 Pa. Superior Ct. 485, 281 A. 2d 741 (1971), it was held that an arbitrator who allowed "stacking" in a similar situation would not be reversed by our Courts, under the common law, since he had not been involved in "fraud, misconduct, corruption or other such irregularity which caused him to render an unjust, inequitable an unconscionable award". While we did not review the *merits* of the arbitrators decision

in that case, and while the instant situation involves statutory, rather than common law arbitration, that case pointed out that policy provisions similar to the ones involved herein are susceptible to more than one interpretation. Moreover, in the *Flynn* case, supra, cited by our Court in *Harker,* supra, the Common Pleas Court in Allegheny County interpreted another similar policy to allow stacking in the exact same manner here sought by appellee. In light of these precedents, if we were to find in favor of appellant, we would have to find that the policy is susceptible to only one construction. Our reading of the policy and recognition of the precedents mentioned leads us to an opposite conclusion.

In *Flynn,* supra, the lower court stated: "Defendant seeks to avoid fully indemnifying its insured on what we believe to be an overly-strict construction of its policy in its favor. If it were intended to restrict the limit of liability to ten thousand ($10,000) dollars in one policy where more than one automobile is covered, *this could have been very easily accomplished in plain unmistakable language.*" (Emphasis supplied) *Flynn, supra* at 199-200. The appellee has provided in its brief, an abstract of another company's insurance policy which contains, it is claimed, the type of limitation of liability provision by which an insurer may avoid "stacking". It would be inappropriate to pass at this time on the effectiveness of such clause, not involved in the instant dispute, but it is pertinent to note that it represents a better attempt by an insurer to expressly provide that there be no stacking than has been attempted in the policy of the appellant herein.

The appellant, in a different argument, claims that the appellee, a guest passenger, is in a different "class" of insureds than would be the host driver or his immediate family members who might be entitled to stack

coverage. First, this argument runs directly contrary to the provisions of appellant's own policy, which makes no such distinction, and includes "any other person while occupying an insured automobile. . . ." within the same definition of "insured" that includes "the named insured and any relative". Second, unlike one or two sister states which have been alone in finding a distinction such as the one sought by appellant, the courts of our state have made no such delineation. In *Bankes v. State Farm Mutual Automobile Insurance Company, supra,* our Court stated that: ". . . our Supreme Court and Legislature have indicated that the provisions of the uninsured motorist act must be liberally construed so that innocent victims will be protected from irresponsible drivers." *Id.,* at 168.

Further, our Supreme Court, quoting in part from other cases, noted that uninsured motorist statutes are: ". . . designed to give monetary protection to that ever changing and tragically large group of persons who while using the highways themselves suffer grave injuries through the negligent use of those highways by others. We [have in a prior case] declared for liberal construction of the statute in order to achieve the legislative intent, and we . . . adhere to that declaration". *Harleysville Mutual Casualty Company v. Blumling, supra,* at 395.

We are not prepared to erase the precedent established in this area, nor to call for a change in the philosophy enunciated by our courts and legislature by adopting the distinction sought by appellant.

The order of the lower court is hereby reaffirmed.

———

DISSENTING OPINION BY SPAETH, J.:

While I agree that the policy in question here might be differently worded, I do not see any reasonable in-

terpretation under which appellee could recover more than $10,000.

Paragraph Four under the heading "Conditions" reads as follows: "Two or More Automobiles. When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each, but an automobile and a trailer attached thereto shall be held to be one automobile as respects limits of liability under the Liability Coverage of this policy. . . ." This simply means that instead of two policies being written, one for each of two automobiles owned by the same person, one policy is written to cover both of them, but it will apply, not just "to each," but "*separately to each;*" *i.e.*, to each as if the other did not exist. No reasonable gloss contrary to this one is proffered by appellee.

Under the heading "Limits of Liability," the following paragraph appears: "The limit of liability for Uninsured Motorists Coverage stated in the declarations as applicable to 'each person' is the limit of the Company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provisions respecting each person, the limit of liability stated in the declarations as applicable to 'each accident' is the total limit of the Company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident." This is clear enough; it says that "each person," *i.e.*, any one person, is limited to one stated amount for any single accident. If more than one person is involved in one accident, the ceiling of coverage for all of them combined is that which is stated for each accident." Again, no contrary gloss is proffered. The schedules attached to the policy pro-

vide that the maximum for "each person" is $10,000, and that for "each accident" the ceiling is $20,000. I cannot imagine how these paragraphs can be read to imply that any one person would ever get more than $10,000 for any one accident in either one of the policyholder's cars. He could hardly be in more than one of the cars during a single collision. *See* "Limitation of Amount of Coverage Under Automobile Liability Policy As Affected By Fact That Policy Covers More Than One Vehicle," 37 A.L.R. 3d 1263 (1971) (collecting cases in which the separability clause was held sufficient to limit liability to the amount expressly stated in the policy).

Appellee should bear the burden of demonstrating some ambiguity. She should not be able to declare that one exists and then leave it to the court to find it. I, for one, cannot find it. "The conclusion is inescapable that courts have sometimes invented ambiguity where none existed, then resolved the invented ambiguity contrary to the plainly expressed terms of the contract document. To extend the principle of resolving ambiguities against the draftsman in this fictional way not only causes confusion and uncertainty about the effective scope of judicial regulation of contract terms but also creates an impression of unprincipled judicial prejudice against insurers." Keeton, Insurance Law §6.3(a) at 356 (1971).

The order should be reversed.

JACOBS and CERCONE, JJ., join in this dissenting opinion.