## Voight v. State Farm Insurance Company

*Morton Gordesky*, for petitioner.
*Frank M. Jakobowski*, for respondents.

GELFAND, *J.*, January 9, 1978—This matter comes before our court on petition by the State Farm Insurance Company (hereinafter referred to as "State Farm" or "petitioner") to vacate an arbitrator's award in the amount of $3,000 to Ernest Voight and Elizabeth Willis (hereinafter referred to as "Voight" and "Willis," respectively, or "respondents").

The record indicates the following:

On March 22, 1975, respondent Voight, a minor

then residing in respondent Willis' house as her foster child, was injured when, as a pedestrian, he was struck by an automobile driven by an uninsured motorist.

Respondents thereafter sought to recover for Voight's injuries under the uninsured motorist clause of an automobile insurance policy issued to Willis by State Farm and which includes an uninsured motorist clause that provides coverage up to $10,000 for Willis, as named insured, her spouse and relatives of either, while residents of her household, for bodily injury involving an uninsured motorist.

Although, at the time of the accident and for some time previous thereto, Voight was a resident of Willis' household, and Voight was under Willis' care, they were in no way related by blood or marriage. Further, at all times relevant hereto, Voight's legal guardian was the Catholic Social Services located at 222 North 17th Street, Philadelphia.

State Farm denied coverage of respondent Voight and refused to compensate respondents for Voight's injuries, and, thereafter, in keeping with the terms of the insurance policy, the parties submitted the controversy to arbitration pursuant to the Pennsylvania Arbitration Act.[1]

On April 7, 1977, the arbitrator entered an award in the amount of $3,000 in favor of respondent Voight because his injuries were covered by the policy issued by State Farm on the basis that Willis stood in loco parentis to Voight and thereby created in the latter the status of a relative living in Willis' household.

---

1. Act of April 25, 1927, P.L. 381, No. 248, sec. 1 et seq., 5 P.S. §161 et seq.

Subsequently this appeal was taken, and at the hearing thereon, two principal issues arose as follows:

I. As a foster child living in the named insured's household, is Voight an insured party whose injuries would be covered under the terms of the State Farm insurance policy?

II. Is the arbitrator's award in contravention of the law and therefore subject to modification or disaffirmance by this court?

The analysis of an insurance policy, like the interpretation of any other written contract, is a question of law. The policy must be read in its entirety and should be construed according to the plain meaning of the words used, so as to avoid ambiguity while at the same time giving effect to all of its provisions: Blocker v. Aetna Cas. & Sur. Co., 232 Pa. Superior Ct. 111, 332 A. 2d 476 (1975).

If the language of a policy prepared by an insurer is either ambiguous, obscure, uncertain or susceptible to more than one construction, we are constrained to construe that language most strongly against the insurer and accept the construction most favorable to the insured: Penn-Air, Inc. v. Indemnity Ins. Co. of N.A., 439 Pa. 511, 269 A. 2d 19 (1970); Blocker v. Aetna Cas. & Sur. Co., supra.

However, where the language of the policy is clear and unambiguous, it must be construed according to the plain and ordinary meaning of the words used: Pennsylvania Mfrs.' Assn. Ins. Co. v. Aetna Cas. & Sur. Ins. Co., 426 Pa. 453, 233 A. 2d 548 (1967); Blocker v. Aetna Cas. & Sur. Ins. Co., supra.

Although, to the extent possible, an uninsured motorists clause in an insurance contract should be

interpreted to provide coverage,[2] we cannot resort to a forced construction in order to fasten liability upon an insurer which, by the terms of the policy, it has not assumed.[3]

The policy clause involved here defines persons insured, by the policy's uninsured motor vehicle coverage as "(1) the first person named in the declarations and while residents of his household, his spouse and the relatives of either." Willis is the named insured involved herein and Voight claims coverage as a relative residing in the household.

According to common usage, a relative is "a person connected with another by blood or affinity; esp: one allied by blood." Webster's 3rd New International Dictionary 1916 (1965). Similarly, Black's Law Dictionary (4th ed. 1968) defines "relative" as "A kinsman; a person connected with another by blood or affinity. When used generically, includes persons connected by ties of affinity as well as consanguinity, and, when used with a restrictive meaning, refers to those only who are connected by blood." At 1453.

The uninsured motorists clause clearly and unambiguously limits coverage to persons residing in the named insured's household who are relatives of the named insured or her spouse. The clear definition of "relative" indicates connection by blood, affinity or consanguinity, and it would be a forced construction of the policy clause to find as being included therein coverage of fosterchildren, who

2. Shamey v. State Farm Mut. Auto. Ins. Co., 229 Pa. Superior Ct. 215, 331 A. 2d 498 (1974).

3. Penn-Air, Inc. v. Indemnity Ins. Co. of N.A., supra.

are not connected either by blood or marriage to their fosterparents, but, who are merely residing in their household due to a placement by the child's legal guardian. Thus, we are constrained to find that mere residence by Voight in the status of a fosterchild in Willis' residence does not create coverage of him as an insured under the policy terms here.

In addition, it is further contended by respondents that although fosterchildren in general may not be covered by the policy terms, in the matter herein Voight is covered because of an in loco parentis relationship between him and Willis, which creates a relationship tantamount to parent-child.

Although the proper definition of one in loco parentis to a child is a person who means to put himself or herself in the situation of a lawful parent of the child with reference to the parent's office and duty of making provision for the child, the mere existence of a fosterparent/fosterchild relationship does not require a finding that an in loco parentis relationship also exists: Kransky v. Glen Alden Coal Co., 354 Pa. 425, 47 A. 2d 645 (1946); D'Auria v. Liposky, 197 Pa. Superior Ct. 271, 177 A. 2d 133 (1962). Regarding this point our appellate courts have stated:

"In loco parentis is a legal status and proof of essential facts is required to support a conclusion that such a relationship existed. While the support and maintenance of a dependent child is a fact of evidentiary value in determining whether the one furnishing the support stands in loco parentis to the child, it is necessary that the evidence as a whole be sufficient to justify a finding that the supporting

person intended to assume the rights, duties and responsibilities of a lawful parent to the child." Kransky v. Glen Alden Coal Co., supra, at 427-428; D'Auria v. Liposky, supra at 278.

The arbitrator below committed legal error in ruling, as a matter of law with no factual basis, that fosterparent Willis stood in loco parentis to her fosterchild Voight, especially since the Catholic Social Services was still the legal guardian of the child, with such duties and responsibilities as are attendant with that status.

After having established an erroneous in loco parentis relationship, the arbitrator then compounded the error by utilizing this determination to clothe the fosterchild with the character of relative residing in the named insured's household so as to create coverage as an insured under the policy terms even though the policy limited such coverage only to the named insured and, while residing in her household, her spouse and relatives, a category with which respondent Voight did not comply.

Since a correct application of the relevant law compels us to find that Voight is not covered by the policy issued by State Farm to Willis, the arbitrator's award was against the applicable law.

The Pennsylvania Arbitration Act of April 25, 1927, P.L. 381, sec. 11, 5 P.S. §171, provides in pertinent part:

"In either of the following cases the court shall make an order modifying or correcting the award upon the application of any party to the arbitration:
"...
"(d) Where the award is against the law, and is

such that had it been a verdict of the jury the court would have entered different or other judgment notwithstanding the verdict.

"The court may modify and correct the award or resubmit the matter to the arbitrators."

The Commonwealth Court has analyzed our scope of review under section 11(d) to be as follows:

"While we may modify or correct the award for errors of law by the arbitrators, we may not disturb their findings unless they are against the clear weight of the evidence. . . . Review of factual determinations of the arbitrators on a petition to modify or correct an award as though on a motion for judgment n.o.v. requires us to view the facts in the light most favorable to the party which prevailed before the arbitrators and to draw inferences favorable to that party's cause." Pennsylvania Turnpike Comm. v. Litton RCS, Inc., 20 Commonwealth Ct. 577, 583, 342 A. 2d 108 (1975).

The arbitrator in the herein case made an error of law in basing his award on the assumption that, as a matter of law, a fosterparent is in loco parentis to a fosterchild. Since respondents' averments before us, with all possible inferences therefrom drawn in their favor, do not support a finding of in loco parentis and no finding of insurance coverage can be made in the absence of such a relationship, we are irresistibly led to the conclusion that the award is against the law, and that we are required to correct the award by vacating it.

Consequently, on August 9, 1977, this court issued the following

## ORDER

And now, upon consideration of the within petition, and on motion of Frank M. Jakobowski, Esq., attorney for defendant, it is ordered that the arbitrator's award be vacated.