436 A.2d 669

**Barbara Ann D'ALLESSANDRO,**

v.

**DURHAM LIFE INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 1, 1980.

Filed Oct. 30, 1981.

Petition for Allowance of Appeal Granted Feb. 16, 1982.

Hugh M. Emory, Paoli, for appellant.

William E. Benner, Doylestown, for appellee.

Before HESTER, CAVANAUGH and VAN der VOORT, JJ.

CAVANAUGH, Judge:

On or about March 21, 1975, Charles D'Allessandro applied for group life insurance with the Durham Life Insurance Company and signed an application in which he stated that in the prior five years he had not consulted a physician. He also stated that he never had heart trouble, high blood

pressure or chest pains.[1] At that time he had a history of coronary and other heart problems, including coronary pain consistent with coronary disease and angina pectoris. During the period in question Mr. D'Allessandro had been hospitalized at St. Agnes Hospital in Philadelphia for recurrent coronary insufficiency pain and at Roxborough Memorial Hospital for kidney problems. He had also been treated by a Dr. Segal for renal cholic. On July 1, 1975, the appellant, Durham Life Insurance Company, issued a group life insurance policy in the amount of $50,000.00 to Mr. D'Allessandro and his wife, Barbara D'Allessandro, the appellee herein, was named the beneficiary. Mr. D'Allessandro died on October 14, 1975, as a result of coronary artery disease. Prior to his death he paid premiums in the amount of $400.65. A copy of the application containing the insured's statements was furnished to the insured during his lifetime. Appellee claimed the proceeds of $50,000.00 under the insurance policy which the appellant refused to pay. Appellee then commenced an action in assumpsit. The matter was decided by Judge Garb on the basis of stipulated facts. Appellee's motion for summary judgment was granted and appellant's motion for summary judgment was denied. A verdict was entered for appellee and against appellant in the amount of $50,000.00 and Durham Insurance Company has appealed to this Court.

The sole issue for our determination is whether the application for insurance which was completed and signed by Mr. D'Allessandro may be used by the appellant to contest the claim of appellee, the named beneficiary under the policy. The court below determined that the application contained obviously false representations but that it could not be used

---

1. On the application for insurance Mr. D'Allessandro answered "No" to the following two questions:

"2. Have you or any of your dependents to be insured ever had heart trouble, high blood pressure, chest pains, albumin or sugar in urine, tuberculosis, cancer, tumor, or ulcers, or any other health impairments?

"3. During the past five years have you or any of your dependents to be insured consulted a physician or other practitioner, been hospitalized or had a surgical operation?"

to contest the appellee's claim. Appellee agrees that the misstatements of Mr. D'Allessandro in his application for insurance were of such a nature that she would be barred from claiming under the policy if the application could be used to contest the claim. The policy itself deals with contestability and states:

"INCONTESTABILITY—STATEMENTS BY INSURED PERSONS

The insurance of any person shall be incontestable after it has been in force for two years. All statements made by any of the persons insured hereunder shall be deemed representations and not warranties and no such statement shall be used in defense of a claim hereunder unless it is contained in a written instrument signed by him and unless a copy of the instrument containing the statement has been furnished to the person making the claim."

The insured died within two years after the issuance of the policy so that it does not become incontestable because of the first sentence. Incontestability, if it exists, would be based on the second sentence. The court below found that the appellee was not furnished with a copy of the application signed by Mr. D'Allessandro until after his death and under the court's interpretation of the policy it could not be used by the insurance company as a defense against appellee's claim.

When interpreting a contract the intention of the parties must be determined. In a written contract the intent of the parties is manifested by the writing, and when the words are clear and unambiguous the intent is to be determined only from the express language of the agreement. *Robert F. Felte, Inc. v. White*, 451 Pa. 137, 302 A.2d 347 (1973). *See also Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3rd Cir. 1979). In this case, the words in the contestability clause are unambiguous as far as they go. The court below interpreted the contract as setting forth the intention of the parties that the statement must be furnished to the claimant prior to the insured's death, and we agree with that interpretation. As stated in *Blocker v. Aetna Casualty &*

*Surety Company*, 232 Pa.Super. 111, 114, 332 A.2d 476, 477–8 (1975):

> The single issue for our determination will of course be resolved by our analysis of the terms and conditions of the insurance policy issued by the appellant. This analysis of an insurance policy, like the interpretation of any other written contract, is a question of law for the court. *Bole v. New Hampshire Fire Insurance Company*, 159 Pa. 53, 28 A. 205 (1895). The policy must be read in its entirety; it should be construed according to the plain meaning of the words used, so as to avoid ambiguity while at the same time giving effect to all of its provisions. *Masters v. Celina Mutual Insurance Company*, 209 Pa.Super. 111, 224 A.2d 774 (1966); *Galvin v. Occidental Life Insurance Company*, 206 Pa.Super. 61, 64, 211 A.2d 120, 122 (1965). If it is determined that the language of a policy prepared by an insurer is either ambiguous, obscure, uncertain or susceptible to more than one construction, we must construe that language most strongly against the insurer and accept the construction most favorable to the insured. *Patton v. Patton*, 413 Pa. 566, 573, 198 A.2d 578, 582 (1964); *Flynn v. Allstate Insurance Company*, 50 Pa.D. & C.2d 195, 199–200 (1970).

The court below in reaching its conclusion that the person making the claim, in this case the beneficiary under the policy, must be furnished with a copy of the statement prior to the insured's death, relied on *Layman v. Continental Assurance Company*, 430 Pa. 134, 242 A.2d 256 (1968). In that case the issue was whether an insurance carrier complied with the Act of May 11, 1949, P.L. 1210, § 6, as amended, 40 P.S. § 532.6(3) [2] by sending a beneficiary a copy

---

**2.  § 532.6  Standard policy provisions**

No policy of group life insurance shall be delivered in this State unless it contains in substance the following provisions, or provisions which in the opinion of the Insurance Commissioner are more favorable to the persons insured, or at least as favorable to the persons insured and more favorable to the policyholder:

.    .    .    .    .

(3) A provision that a copy of the application, if any, of the policyholder shall be attached to the policy when issued, that all

of her husband's application for insurance three months after his death. The court held that the statute required that a copy of the application be sent to the insured or beneficiary prior to the death of the insured.[3] .

Words in an insurance policy are to be given their plain and popular meaning. *Ranieli v. Mutual Life Insurance Co.,* 271 Pa.Super. 261, 413 A.2d 396 (1979). The policy in this case provided that the application for insurance may not be used to contest a claim unless a copy is given to the person making the claim. The contestability clause was inserted in the policy by the insurance company and was obviously placed there for the benefit of "the person making the claim" since it does not in any way benefit the insurer. There would be little or no benefit to the claimant if the policy only required that a copy of the application be furnished to him after the death of the insured, as it is too late then to make amends. In *Layman v. Continental Assurance Company, supra,* the insurance company argued that the company could furnish a copy of the application to the beneficiary after the insured's death. The Supreme Court stated at 430 Pa. 138, 139, 242 A.2d 258 (1968):

> Furthermore, appellant assumes that the statute must permit furnishing of a copy after death because its language includes "beneficiary" as well as "insured." This assumption apparently stems from the fact that the beneficiary has no right to alter an insured's application, and therefore could do nothing if a copy of the application was furnished to him (the beneficiary) before the insured's death. *Of course, this argument totally overlooks the very real possibility that the beneficiary, when he realizes that his right to recover might be defeated by the in-*

statements made by the policyholder or by the persons insured shall be deemed representations and not warranties, and that no statement made by any person insured shall be used in any contest unless a copy of the instrument containing the statement is or has been furnished to such person or to his beneficiary.

3. In the instant case the policy was delivered in Missouri and therefore, the requirements of the Act of May 11, 1949, P.L. 1210, § 6, as amended, do not apply.

sured's false statements, will promptly notify the insured and prevail upon the latter to correct these statements. (Emphasis added)

The case of *Metzinger v. Manhattan Life Insurance Company*, 71 Cal.2d 423, 78 Cal.Rptr. 463, 455 P.2d 391 (1969) involved a life insurance policy which provided that the insurer could not contest a claim unless a copy of the insured's statement pertaining to insurability "has been furnished to the individual or to his beneficiary." The court held that since a copy of the statement was not furnished to the insured or to his beneficiary until after the insured's death, the insured's statement could not be used to contest the claim. The Supreme Court of California cited *Layman v. Continental Life Assurance Company, supra*, in support of its determination that the purpose of the provision in the policy was to provide an opportunity to review the application while the insured is still alive, and to correct misstatements which may appear therein.

It is basic that any ambiguities or uncertainties in language in insurance policies are construed against the insurer and in favor of coverage. *Mohn v. American Casualty Company*, 458 Pa. 576, 326 A.2d 346 (1974). Applying this rule, the ambiguity as to when the application must be furnished to the claimant must be resolved against the insurer.

Appellant agrees that in most cases the "person making the claim" will be the "beneficiary". Such was the situation in the instant case. We recognize that in some cases the designated beneficiary will not be the claimant, as where the beneficiary predeceases the insured or becomes incompetent. In such a case, the claimant may be the personal representative of the insured or the guardian of the estate of the incompetent. The policy provides in discussing "beneficiary for death benefits" that "should any beneficiary of an Insured predecease such Insured, the interests of such beneficiary shall vest in the Insured. Any part of the insurance for which there is no designated beneficiary surviving at the death of the insured shall be payable to the executors or

administrators of the Insured." In these circumstances the person making the claim may not be known to the insurer prior to the death of the insured. This does not alter the fact that where the beneficiary designated in the policy is the person making the claim, the insurer may readily furnish a copy of the application to the claimant during the insured's lifetime.

It is clear in this case, and the parties to the dispute have so stipulated, that if the insurer could contest the claim that it would prevail. However, it drafted the contestability clause, and it should not now complain that it gives protection to a claimant who will benefit by the misrepresentations of the applicant for insurance.

Order affirmed.

HESTER, J., files dissenting opinion.

HESTER, Judge, dissenting:

I respectfully dissent.

This case was decided by the lower court on the basis of a stipulation of facts in support of cross motions for summary judgment, including the following narrowly-stated issue: "May Mr. D'Allessandro's application for insurance be used by Durham Life Insurance Company to contest the claim of Mrs. Barbara D'Allessandro?"

The parties also stipulated that Mr. D'Allessandro signed an application for the purchase of a group life insurance policy in the amount of $50,000 on March 21, 1975. In this application, Mr. D'Allessandro knowingly made material misrepresentations to Durham Life Insurance Company concerning his medical history and his then physical condition, specifically concerning his chronic coronary disease and recurring chest pains.

Mr. D'Allessandro died of a coronary artery disease less than seven months after he applied for the insurance. The matters misrepresented on the application actually resulted in his death.

Mrs. D'Allessandro was named the sole beneficiary on the policy. She claims that she had no knowledge of the application or policy prior to her husband's death.

The parties also stipulated that Mr. D'Allessandro received a copy of his signed application along with the original insurance policy, prior to his death. This receipt would satisfy any requirement of the Act of May 11, 1949, P. L. 1210, Section 6, as amended, 40 P. S. Section 532.6(3)[1], which, if applicable, would have required Durham to furnish a copy of the application to either Mr. D'Allessandro or Mrs. D'Allessandro as a condition precedent to the use of the application, or any statement therein, by Durham to contest its obligation to pay on the policy.[2]

**1.** § 532.6 Standard policy provisions

No policy of group life insurance shall be delivered in this State unless it contains in substance the following provisions, or provisions which in the opinion of the Insurance Commissioner are more favorable to the persons insured, or at least as favorable to the persons insured and more favorable to the policyholder:

(3) A provision that a copy of the application, if any, of the policyholder shall be attached to the policy when issued, that all statements made by the policyholder or by the persons insured shall be deemed representations and not warranties, and that no statement made by any person insured shall be used in any contest unless a copy of the instrument containing the statement is or has been furnished to such person or to his beneficiary.

**2.** Since the parties stipulated that the policy in question was delivered in the State of Missouri and also stipulated that the D'Allessandros were residents of Pennsylvania, the court is initially confronted with a question of conflict of laws. The record from the court below would not enable the reviewing court to adequately answer this question. However, after reviewing the laws of both Missouri and Pennsylvania, this issue need not be addressed since the above-cited provision of Pennsylvania law was satisfied by the receipt of a copy of the application by Mr. D'Allessandro prior to his death. There is no provision of Missouri law which, as a minimum, would require Durham to furnish a copy of the application to either Mr. or Mrs. D'Allessandro in order to preserve its right to use the application to contest its obligation to pay.

The only section of Missouri law which may be relevant to this matter is Section 376.580 Missouri Statutes Annotated which states: "No representation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this state, shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, . . ."

As correctly decided by the court below, this case does not involve the application of the minimum requirements of either Pennsylvania or Missouri law. The case must be decided by interpreting the insurance policy which, like that of any written contract, is a question of law for the Court.

The relevant section of the policy in question reads as follows:

"Incontestability—Statements by Insured Persons. The insurance of any person shall be incontestable after it has been in force for two years. All statements made by any of the persons insured hereunder shall be deemed representations and not warranties and no such statement shall be used in defense of a claim hereunder unless it is contained in a written instrument signed by him and unless a copy of the instrument containing the statement has been furnished to the person making the claim."

Since Mr. D'Allessandro died less than seven months after he applied for the insurance, the first sentence of this provision is not applicable. The lower court held that the insurance application contained obviously false representations, but that Durham could not use it to contest the claim based on this provision of the policy. In reaching its conclusion the lower court has obviously equated the words "beneficiary" with "the person making the claim".

Mrs. D'Allessandro is the designated beneficiary on the certificate of insurance. She is also "the person making the claim", and the parties have so stipulated. Durham admits that "in most cases" the "beneficiary" will also be "the person making the claim". However, as recognized by the court below, there are numerous instances where the "beneficiary" is not "the person making the claim". For example, if Mrs. D'Allessandro had predeceased her husband or had been declared mentally incompetent prior to his death, her personal representative would become "the person making the claim".

As stated above, the parties have stipulated that ". . . the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable."

If an insurance policy designates a class of beneficiaries, e. g., "to all of my children who are then living", then it is clear that the person or persons who may ultimately make a claim can not be determined until the death of the named insured. Furthermore, in the case of minor beneficiaries, the person actually making the claim would be the guardian of the minor child.

In all of these circumstances, it would be unreasonable to expect Durham or any insurance company to ascertain the identity of all potential personal representatives, guardians or other persons who may make a claim on the policy.

Simply stated, a person cannot make a claim unless there is an unconditional cause of action to be stated. In the instant case, there was no claim to be made under the policy until the death of Mr. D'Allessandro. Upon his death, Mrs. D'Allessandro, who was previously named as the designated beneficiary, became vested or entitled to make a claim under the policy. She became a claimant. At that time, Durham furnished her a copy of the application in order that it could then contest the claim on the basis of the intentional misrepresentations of Mr. D'Allessandro.

In reaching its decision, the lower court relied on *Layman v. Continental Assurance Company*, 430 Pa. 134, 242 A.2d 256 (1968), where the Supreme Court held that Pennsylvania law required the insurance company to furnish a copy of the application to the insured *or the beneficiary*, prior to the insured's death, in order to preserve the insurance company's right to use the application to contest payment. 40 P. S. Section 532.6(3). Since it is possible the beneficiary under an insurance policy, and not the insured, could be the owner of the policy, it would be reasonable to require the insurance company to provide a copy of any statement made by the insured to the beneficiary, in order to preserve the insurance company's right to utilize the statement to contest payment.

However, in the instant case, Mrs. D'Allessandro had no knowledge that the policy existed until following her husband's death. Obviously, she was unaware of any potential claim that she had until following his death.

*Layman*, supra, is inapposite since Mrs. D'Allessandro did not become "the person making the claim" until her husband's death.

If Durham had supplied a copy of the application to Mrs. D'Allessandro prior to her husband's death, she would not have been able to preserve her right to recover since notification of Durham of the misstatements would have resulted in a cancellation of the policy. Her husband, a party to the contract, had the opportunity to inform his wife about the policy, if he so desired.

The language in the policy is unambiguous, and it is not, therefore, necessary to utilize a presumption or rule of construction in order to interpret the policy. *Poole v. Great American Insurance Company*, 407 Pa. 652, 182 A.2d 509 (1962), Restatement of the Law of Contracts, Section 236, *Blocker v. Aetna Casualty and Surety Company*, 232 Pa.Super. 111, 332 A.2d 476 (1975).

The parties have stipulated that Mrs. D'Allessandro is "the person making the claim". The parties also stipulated that Mrs. D'Allessandro was furnished a copy of the application in question once she became entitled to make a claim.

Durham has clearly complied with the relevant provision of the policy.

Furthermore, since Durham was induced to enter into the contract by means of the material misrepresentations of Mr. D'Allessandro, there was no validity of assent between the parties at the inception of the contract. Therefore, the policy in question is voidable at the option of Durham without any interpretation of any provision of the policy itself. *College Watercolor Group, Inc. v. William H. Newbauer, Inc.*, 468 Pa. 103, 360 A.2d 200 (1976), *Iacoponi v. Plisko*, 412 Pa. 576, 195 A.2d 362 (1963), *DeJoseph v. Zambelli*, 392 Pa. 24, 139 A.2d 644 (1958), *Greenwood v. Kadoich*, 239 Pa.Super. 372, 357 A.2d 604 (1976), *Stringert and Bowers, Inc. v. On-Line Systems, Inc.*, 236 Pa.Super. 196, 345 A.2d 194 (1975).

Mr. D'Allessandro not only misrepresented his medical history and physical condition, he also, as stipulated below, intentionally and fraudulently concealed the identity of the numerous doctors who had attended him during the five previous years. As a result, Durham had no opportunity to investigate his medical history and condition.

A person guilty of intentional fraud should not be permitted to benefit from his misrepresentations, to the detriment of an innocent party.

Accordingly, I would reverse the order of the court below, grant summary judgment to Durham, and order Durham to pay to the Estate of John D'Allessandro the sum of $400.65, representing a refund of all premiums paid by Mr. D'Allessandro prior to his death.