### Rothstein *v.* Aetna Insurance Company, Appellant.

Argued March 23, 1970. Before WRIGHT, P. J., WAT-KINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*S. Robert Levant,* with him *Bennett, Bricklin & Saltzburg,* for appellant.

*Robert L. Arangio,* with him *William L. Meritz,* and *Zarwin, Prince, Baum, Steerman, Somerson & Meritz,* for appellee.

OPINION BY JACOBS, J., June 11, 1970:

The principal issue in this case involves the construction of an exclusionary clause in an all-risk jewelry insurance policy.

Appellee, a manufacturing and wholesale jeweler, purchased the policy from appellant. While the policy was in effect a manufacturer's representative, who was representing appellee, parked his automobile one afternoon in a parking lot in Fort Wayne, Indiana. A case containing appellee's sample jewelry was locked in the trunk of the automobile. When the representative returned in approximately one hour to get his automobile, it had been stolen. The automobile was found later, but the trunk had been pried open and the jewelry and case were missing.

When appellant refused to pay his claim, appellee started this suit on the policy. Appellant denied liability on the basis of an unattended automobile clause. Judge JOSEPH SLOANE tried the case, without a jury, and found for appellee in the amount of $9,046.42.

In order to understand the issues it is necessary that we briefly review the terms of the policy and quote certain parts. The policy was labeled a jeweler's block policy. Admittedly it insured property such as that taken from the trunk of appellee's automobile. The appellant denied liability for the loss of appellee's property because of the following provisions under "Insuring Conditions" of the policy:

"5. This policy insures against all risks of loss of or damage to the above described property arising from any cause whatsoever except:

. . . .

"(I) Loss or damage to property insured hereunder while in or upon any automobile, motorcycle or any other vehicle unless, at the time the loss occurs, there is actually in or upon such vehicle, the Insured, or a permanent employee of the Insured, or a person whose sole duty it is to attend the vehicle. This exclusion shall not apply to property in the custody of a carrier mentioned in Section 2 hereof, or in the cus-.

tody of the Post Office Department as first class registered mail."

Section 2 of the policy referred to in the above exclusionary clause is denoted "Limitations of Liability" and reads as follows:

"2. The maximum liability of the Company resulting from any one loss, disaster or casualty is limited to

"A ........ $65,000. in respect of property at the Insured's premises as described herein;

"B ........ $10,000. in respect of property which is (1) in transit by first class registered mail, or railway express (subject to the stipulations of Exclusion (E) of Section 5) or by armored car service; (2) deposited in safe or vault of a bank or safe deposit company; (3) in the custody of a dealer in property of the kind insured hereunder not employed by or associated with the Insured but property deposited for safe keeping with such a dealer by the Insured or its authorized representatives while traveling is subject to the limit expressed in Clause E of this Section;

"C ........ $ NIL in respect of shipments in transit by first class registered air mail or air express (subject to the stipulations of Exclusion (E) of Section 5) sent to any one addressee at any one address during any one day;

"D ........ $ NIL in respect of shipments in transit by customer parcel delivery service and the parcel transportation service of railroads, waterborne or air carriers and passenger bus lines (subject to the stipulations of Exclusion (E) of Section 5);

"E ........ $20,000. in respect of property elsewhere and not included in Clauses (A), (B), (C) and (D) above or otherwise limited herein."

The appellant's objections are twofold. It claims that the policy was clear and unambigious and that parol evidence was not admissible to explain the terms of the policy. Assuming for the sake of argument that

parol evidence was admissible, appellant argues that appellee, even with the aid of that evidence, did not make out a case because it didn't justify a modification of the written contract.

Parol evidence was introduced into the case by appellant who was permitted to call its agent out of turn as the first witness in the case. This witness testified to the negotiations leading up to the issuance of the policy with particular emphasis on unattended automobile coverage. When appellee later attempted to give his version of the negotiations appellant objected, stating its only reason for putting in the oral testimony was to anticipate appellee's contention that appellant's agent had told appellee his representatives' autos would be covered. Appellee was permitted to give his version of the negotiations. Appellant argued that both the agent's and appellee's testimony as to the negotiations should be stricken, but at the end of the case moved and had admitted its agent's written notes of the negotiations.

Even if we were to find that the parol evidence was not admissible, it would not be grounds for reversal because it was error induced and condoned by the appellant. See 2 Henry, Pennsylvania Evidence, §722 (4th ed. 1953) and *Rees v. Schuylkill River E. Side R.R. Co.*, 135 Pa. 629, 20 A. 149 (1890). Furthermore, an analysis of the case shows that the terms of the written policy were never altered or modified and the appellant was not harmed.

It was the appellee's burden to prove the policy and that losses of jewelry in his representative's hands were covered. This was accomplished by the appellant's admission of the policy in its pleadings and the agreement at trial that clause 2-E covered appellee's manufacturer's representatives. At this point appellee had proved at least a prima facie case and parol evidence tending to show that clause 2-E was intended to cover appellee's representatives was harmless surplusage.

Appellee having made out a prima facie case of appellant's liability, the burden of going forward with the evidence shifted to appellant. Appellant attempted to meet that burden by showing that the loss was excluded by clause 5(I).

However, a defense based on an exception or exclusion in a policy is an affirmative one and the burden is cast upon the insurer to establish it. *Armon v. Aetna Cas. & Sur. Co.*, 369 Pa. 465, 469, 87 A. 2d 302, 304 (1952). By its own terms clause 5(I) says the exclusion does not apply to "property in the custody of a carrier mentioned in Section 2 hereof. . . ." Ordinary meanings are given to words unless circumstances show that a different meaning is applicable. Restatement, Contracts, §235(a) and see *Paull v. Pivar*, 161 Pa. Superior Ct. 233, 53 A. 2d 826 (1947). The ordinary meaning of "carrier" is one who carries. Synonyms are "bearer" or "messenger."[1] Such meaning would clearly encompass a manufacturer's representative who "carries" jewelry from community to community in his sales area. No parol evidence was necessary to explain that meaning and any admitted for that purpose was harmless. If the appellant wished to show that carrier was a word of art with a technical meaning, it was up to it to show circumstances justifying such an interpretation. Since it didn't do that, it failed to sustain its burden of showing that the exclusion barred appellee's recovery.

Affirmed.

MONTGOMERY, J., dissents.

---

DISSENTING OPINION BY HOFFMAN, J.:

I cannot agree with the majority interpretation of the word "carrier". It is true that words must be given their ordinary meaning. However, in determining the

---

[1] Webster's Third New International Dictionary.

ordinary meaning of a word, one must consider it in the context in which it is used.

Thus, it is true, as the majority suggests, that the word carrier means "bearer" or "messenger". The word carrier in another context, however, might also refer to an insurance company or to one who is spreading a communicable disease. For certain purposes, an elevator may be deemed a carrier. See *Connelly v. Kaufmann and Baer Co.*, 349 Pa. 261, 37 A. 2d 125 (1944).

In deciding which of these ordinary and normal interpretations is applicable, however, one must consider the insurance policy as a whole. As Judge MONTGOMERY, writing for this Court stated in *Galvin v. Occidental Life Ins. Co.*, 206 Pa. Superior Ct. 61, 64-65, 211 A. 2d 120, 122 (1965): "In construing the policy it must be read in its entirety and the intention of the parties gathered from a consideration of the entire instrument. . . . The intention of the parties is paramount and in construing such a contract the court will adopt the interpretation which, under all of the circumstances of the case, ascribes the most reasonable, probable and natural intention of the parties, bearing in mind the objects manifestly to be accomplished. . . . *Dictionary definitions of a word must give way to the use of the word in a policy.*"

Viewing the policy as a whole, it is difficult to agree with the majority that the word "carrier" was intended to include any "bearer" or "messenger". It would appear to me to have been used in its ordinary and natural meaning of a company engaged in the business of transporting goods for others. Thus, the policy makes repeated references to "railway express," "armored car service," "air express," "customer parcel delivery service," "parcel transportation service of railroads, water-borne or air carriers," "passenger bus lines," and "motor carriers." It is these carriers, engaged in the com-

mercial transportation of goods which would ordinarly be deemed "carriers" within the meaning of an insurance policy.

I cannot accept that a fair, construction of this policy would result in the interpretation of the word "carrier" to include a manufacturer's representative merely because he carries jewelry from place to place. Accordingly, I would reverse judgment and enter judgment for the defendant.

CERCONE, J., joins in this dissenting opinion.