**GREAT AMERICAN INSURANCE COMPANY**

v.

**Robert RAQUE.**

**Civ. A. No. 75–2833.**

United States District Court,
E. D. Pennsylvania.

May 1, 1978.

Steven R. Waxman, Bolger & Picker, Philadelphia, Pa., for plaintiff.

Ronald H. Sherr, Spencer, Sherr & Moses, Norristown, Pa., for defendant.

## MEMORANDUM

FOGEL, District Judge.

The parties have filed cross-motions for summary judgment on a claim for reimbursement of benefits under a liability insurance contract and have agreed to have the matter handled as a case stated. A stipulation of facts, accompanied by exhibits, presents all the facts which are material to an adjudication of this controversy. The parties agree there is no genuine issue as to any of these material facts. For the reasons which follow, the motion of defendant will be granted.

## I. JURISDICTION

This action is based on diversity jurisdiction. 28 U.S.C. § 1332. Plaintiff, Great American Insurance Company, (Great American), the successor in interest to Selective Insurance Company, Inc., is a New York Corporation with its principal place of business located in Ohio. Defendant, Robert Raque, (Raque), the successor in interest to Raque Manufacturing Company, Inc., is a citizen of Kentucky.

The amount in controversy, exclusive of interest and costs, exceeds $10,000.00. The occurrence from which this claim arises had its genesis in this district and venue is proper. 28 U.S.C. § 1391.

## II. FACTS

Shortly after November 10, 1967, Mrs. Smith's Pie Company, (Mrs. Smith's), purchased a "dough sheeter" machine from Raque. This pie-crust making machine was installed by Raque on top of another pre-existing machine, manufactured by Luty Machine Company, with which it worked in tandem. The dough sheeter was specially modified from the standard model to adapt to the Luty machine already at Mrs. Smith's. The Raque machine was smaller in size than the Luty machine and a ledge

several inches wide was created where the two were connected.

The standard dough sheeter model was manufactured to be used by a worker who stood on a small platform approximately 10 inches off the floor. The machine in question had to be loaded or filled with dough or flour from the top, which was six feet above the ground. Raque did not supply a platform, nor did he suggest that one be used. He expected that Mrs. Smith's would supply its own platform.

After the installation was completed, Raque demonstrated the operation of the machine at Mrs. Smith's by standing on a small step ladder which was not attached to the machine. Raque claimed that it would have been impractical for a worker to stand on the ledge because it was 38 inches off the ground. A worker could not have reached down far enough to get the flour or dough from the floor without climbing down each time.

Raque did not guard any of the openings where the dough was added, because the guards would have blocked the openings and prevented the dough from entering the machine.

The parties stipulated that Fred E. Cook, Jr. testified as follows at his deposition:

On January 2, 1969, Cook was employed by Mrs. Smith's Pie Company to operate the pie making equipment consisting of the Raque dough sheeter apparatus and the Luty base. As part of his duties, Mr. Cook was required to place flour into hoppers which were an integral part of the dough sheeter apparatus. Although Mr. Cook was unable to load flour into the hoppers while standing on the floor, Mrs. Smith's Pie Company did not provide him with a ladder of sufficient height to enable him to reach the hoppers. Mr. Cook climbed onto the ledge created by the interface of the dough sheeter apparatus and the base. While loading flour into the hopper, Mr. Cook lost his balance and began to fall. Mr. Cook reached out with his left hand in order to catch himself. His left hand came into contact with rollers which were an integral part of the dough sheeter. His hand became caught between the rollers and he sustained serious injuries to his hand and forearm before the pie making equipment could be turned off.

Because of the small size of the ledge, Cook was only able to put the toes and balls of his feet on the ledge; his heels hung over the side.

On February 1, 1968, Selective Insurance Company, Inc., issued a multi-peril policy of insurance to Raque.

Cook instituted two suits. The first was brought in the Western District of Kentucky against Raque Manufacturing Co., Inc. There is no information on the record which details when the Kentucky suit was brought, when Raque first informed Selective of the Kentucky suit, or its disposition. Raque did obtain counsel in Kentucky, although the date is unknown.

In December, 1970, Cook started a second suit against Raque and the Luty Machine Company in the Court of Common Pleas of Philadelphia County. This complaint alleged a claim for damages as a result of faulty design of the dough sheeter.

Counsel for Selective notified Raque by registered return receipt mail on January 7, 1971, that it intended to defend the Kentucky suit by Cook against Raque but expressly reserved its right to deny coverage. The letter expressly denied coverage and advised Raque to obtain other counsel at its own cost. Selective gave three reasons for its position: 1) the policy did not cover the accident in question; 2) section k of the contract expressly excluded coverage; and 3) Raque failed to give timely notice of the claim.

This letter was in reference to the Kentucky suit, not the Philadelphia suit. One year later, on January 31, 1972, a similar letter was sent to Raque from Selective pertaining to the state action brought in Pennsylvania. Neither letter told Raque that it had the ability to reject the reservation of rights and demand that Selective either defend and assume coverage, or deny coverage.

Counsel for Raque and counsel for Selective cooperated in the investigation and eventual settlement of Cook's suit in the Pennsylvania state court.

On or about September 8, 1975, Great American (which had succeeded Selective by this time) agreed with Raque to have Great American pay the sum of $75,000.00 to Cook in full settlement of his pending litigation. The parties also agreed that the tender of the check by Great American did not constitute an admission of coverage under the insurance policy. Great American reserved all rights to seek indemnification from Raque in the amount of $75,000.00.

Raque refused to indemnify Great American and this suit by Great American is to collect from Raque the moneys paid to Cook.

## III. DISCUSSION

Initially, Raque claims that Great American is estopped from denying coverage under its reservation of rights because its two letters were untimely and insufficient. Plaintiff argues that its reservation of rights was effective and that the parties' agreement concerning the settlement of the Cook case acknowledged that Great American retained its right to disclaim liability under exclusion k of the insurance policy.

■ Assuming *arguendo* that Great American properly reserved its right to challenge liability under exclusion K, we turn now to that contention. Plaintiff has not argued that the Cook incident was not covered by the policy. Once the insured makes out a prima facie case of liability, the burden of going forward with the evidence shifts to the insurer. *Arcos Corp. v. America Mutual Liability Ins. Co.,* 350 F.Supp. 380, 384 (E.D.Pa.1972), appeal dismissed, 485 F.2d 678 (3d Cir. 1973). A defense based on an exception or exclusion in an insurance policy is an affirmative one, and the burden is cast on the insurer to establish it. *Miller v. Boston Ins. Co.,* 420 Pa. 566, 218 A.2d 275 (1966); *Rothstein v. Aetna Ins. Co.,* 216 Pa.Super. 418, 268 A.2d 233, 235 (1970).

Exclusion k reads:

This insurance does not apply . . .

(k) to bodily or property damage resulting from the failure of the named insured's products or work completed by or for the named insured to perform the function or serve the purpose intended by the named insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications or advertising material or printed instructions prepared or developed by any insured; but this exclusion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products or work; . . .

It is hornbook law that ambiguities in an insurance contract are construed against the insurer. *Pittsburgh Bridge and Iron Works v. Liberty Mutual Ins. Co.,* 444 F.2d 1286 (3d Cir. 1971).

Raque denies there is any proof of the manner in which the accident occurred and that paragraph k excludes coverage. Raque claims exclusion k applies to situations in which the pie machine fails to make pies. Since the pie machine has properly made pies, defendant argues that the exclusion does not apply.

Great American interprets exclusion k as denying all claims for bodily injuries resulting from the failure of Raque's products to perform the function or serve the purpose intended, when such failure arises from a mistake or deficiency in any design or formula prepared or developed by defendant. Plaintiff claims that the pie crust machine was defectively designed, because the operator could not safely operate the machine. In particular, plaintiff contends that the placement of a ledge between the machines, the absence of a built in platform for the operator to stand on, and the absence of guards or shields for the rollers where the operator adds ingredients, made the machine defective. Plaintiff claims that the defects are not caused by production failures. The machine was made according to specifications; hence it contends that it was the design that was faulty.

■ Great American rejects defendant's contention that as long as the machine

made pie crusts—it was performing the job it was manufactured to do. We agree with plaintiff that the exclusion would apply if the machine was not designed to protect a reasonably careful operator. *Smith v. Hobart Mfg. Co.,* 302 F.2d 570 (3d Cir. 1962).

In order to be defective, a product must present an unreasonable danger or an unreasonable risk of harm to the user at the time of sale. *Bair v. American Motors Corp.,* 535 F.2d 249 (3d Cir. 1976); Rest. Torts, 2d § 395. Raque is not under a duty to design a machine that is accident proof. If a product is used or handled abnormally, the danger created by that abnormal use is not an unreasonable danger. *Dorsey v. Yoder Co.,* 331 F.Supp. 753 (E.D.Pa.1971), *aff'd,* 474 F.2d 1339 (3d Cir. 1973).

Plaintiff must establish the following in order to be successful:

1) the dough sheeter was defectively designed and not defective because of a production failure;

2) the defective design was unreasonably dangerous to the user or consumer.

*There is no evidence of a production defect. The sole issue before us is whether the machine was defectively designed so as to be excluded under paragraph k. We find that plaintiff has failed to establish such a defect.* The absence of a platform was not the cause of Cook's injuries. Cook testified that Mrs. Smith's provided a ladder for his use. Cook stepped off the ladder and knowingly and voluntarily placed himself in the precarious position on the ledge. There is no evidence that the step ladder provided by Mrs. Smith's was insufficient or unsafe. There was no reason for Cook to step onto the ledge. The ledge was clearly not designed to be used as a platform. The testimony established that standing on the ledge, in addition to being unsafe, was impractical because the operator could not have reached the dough or flour on the floor from the ledge. The intended use of the machine contemplated that the operator would have to step up on a platform, step or ladder in order to fill the hopper and then step down to get more supplies.

The absence of guards, the second item named by plaintiff as constituting a defect, is likewise not established. The only evidence in this connection is that it was impractical to guard the rollers because the dough or flour would not flow properly. In addition, plaintiff presented no evidence showing the plausibility of guards. There was likewise no evidence that a reasonably cautious operator, using the machine, would be exposed to the rollers in question.

We are unable to find that the machine was defectively designed. Cook's claim has been settled. We need not speculate about the merits or demerits of his case. It suffices to state that in view of our finding that plaintiff has not met the burden of establishing that exclusion k is applicable to this case, defendant's motion must be granted.