**Kershner v. Prudential Insurance Company**

*Richard Wasserby,* for plaintiff.
*Ralph Michetti,* for defendant.

KELTON, *J.,* February 19, 1987—This is a suit by an insured against an insurance company for medical expenses and lost wages alleged to be due to her under the personal injury protection provisions of a no-fault automobile insurance policy. The principal question post-trial is whether plaintiff policy holder or defendant insurer had the burden of coming forward with evidence of the existence of other programs or contracts which allegedly were a primary source of recovery for such medical expenses and lost wages.

As a result of an automobile accident, plaintiff, Kathleen Carter Kershner, suffered an amputation of part of one hand. Following the accident, she incurred medical expenses of almost $30,000 and suffered a loss of earnings at her place of employment, the Delaware Valley Mental Health Foundation.

She was reimbursed for a portion of her medical bills under policies issued by two other insurers, Massachusetts Mutual Insurance Co. and Postmaster's Health Insurance. In addition, her employer paid to her $2,958 for lost earnings.

The Foundation's payment for lost earnings was under a voluntary payment approved by the Foundation's board of directors by action taken by the board after the date of the accident. This payment by the Foundation was not made pursuant to any formal plan, contract or benefit arrangement.

Plaintiff Kershner has brought this action against her own automobile insurance carrier. She has sought to recover herein for hospital, medical and rehabilitative expenses of $24,839.34 as well as lost wages of $2,958. The action was brought pursuant to the No-fault Act of July 19, 1974, P.L. 489, 40 P.S. §1009.010 et. seq. Prudential has disclaimed liability on its policy arguing that the policy contained a "coordination of benefits" clause. We agree that there was such a clause, but do not agree that the factual basis for applying the clause was ever established.

At the jury trial, many of the facts were stipulated to by the parties. There were other facts about which the parties could not agree and evidence was introduced at trial as to some, but not all of the disputed facts.

The parties agreed that on or about September 25, 1982, Kershner, a Pennsylvania resident, was injured in an automobile accident while she was a passenger; that the injury occurred when plaintiff was covered as an insured under a policy issued by Prudential; that plaintiff's injury was covered under the policy; that an issue for the fact finder was whether Prudential is primarily liable for all necessary and reasonable medical bills or only secondarily liable for the same; that the medial and related bills totalled $29,976.19; that they were all necessary, fair and reasonable; that Prudential has paid $5,137.85 of this amount, and after demand, has refused to pay the balance; that Kershner originally

purchased the policy from Prudential in 1976; and that the original policy of insurance did not initially contain a coordination-of-benefits endorsement.

The parties also agreed that if (as the jury implicitly found) the policy did contain a coordination-of-benefits clause at the time of the accident, then an issue would exist as to whether or not the salary reimbursement paid by the Delaware Valley Mental Health Foundation was the type of benefit that precluded plaintiff's claim for those monies. The parties also agreed that the balance of medical bills not presently paid by Prudential, amounting to $24,839.34, had in fact been paid by collateral sources, including Massachusetts Mutual Health Insurance and Postmaster's Health Insurance. Thus, the question is whether under the policy, plaintiff was entitled to collect twice.

At the trial, no one introduced any evidence as to the exact terms of the Massachusetts Mutual or Postmaster's Health benefits policies. Also, there was no evidence as to any election of options with reference to the Massachusetts Mutual or Postmaster's policies.

On the wage claim, there was testimony by the director of the Foundation that it had no disability policy for Kershner; that the board paid her salary as a matter of grace; that the payment to Kershner was not a benefit; and that the payment of the salary benefit to Kershner was not because of any contract obligation but was done as a matter of grace.

Because Kershner as policyholder had the burden of proving what her contract was, we submitted to the jury a request that it make a special finding as to whether or not plaintiff Kershner had proven by a preponderance of the evidence that she did not receive the so-called coordination-of-benefits endorsement prior to the date of the accident. On that issue,

the jury found that plaintiff had not met her burden and we, therefore, concluded as a matter of law that the coordination-of-benefits endorsement was, in fact, a part of the insurance contract at the time of the accident.

Thereafter, however, we concluded as a matter of law that *defendant* Prudential has not met *its* burden of coming forward with factual evidence that Prudential was entitled to the benefits of the exclusionary language of the endorsement booklet. Accordingly, we directed a verdict in favor of plaintiff and against defendant for the amount claimed plus appropriate interest.

Because of the jury's factual finding against Kershner on the factual question as to her receipt of the coordination-of-benefits "Pennsylvania Endorsement Booklet," the following language became a part of the policy:

"In consideration of a reduction in premium it is agreed that, subject to all of the terms of the Pennsylvania Personal Injury Protection Endorsement not expressly modified herein, *the insurance afforded by the Pennsylvania Personal Injury Protection Endorsement with respect to an eligible person who is covered for the payment of such benefits through a program, group, contract or other arrangement which the named insured has selected as the primary source of recovery for motor vehicle accidents is amended* by any of the following elective options as designated in the Declaration of this policy: . . .

"Option no. 4

"*This insurance is excess over any amounts which are paid or payable for work loss and for medical expenses to or on behalf of such eligible person under the provisions of such other plan of insurance or benefits.* In the event that such benefits

for work loss for the named insured are not available at the time of loss, the company's liability for work loss shall be subject to a two-week waiting period before such benefits are payable to the named insured. In the event that such benefits for medical expenses for the named insured are not available at the time of loss, the company's liability for medical expenses shall be subject to a deductible of $250 with respect to the named insured." (emphasis added).

We must therefore determine whether under the quoted language Kershner or Prudential had the burden of coming forward with evidence that Kershner was "covered for the payment" of Personal Injury Protection benefits through a "program, group, contract or other arrangement . . ." *which the named insured has selected as the primary source of recovery* and whether there were any "amounts payable for work loss and for medical expenses . . . under the provisions of such other plan of insurance or benefits."

Since *neither* party came forward with evidence as to the policy terms and the specifics of Kershner's election (or nonelection) of other primary coverage, the results are determined by deciding as a matter of law who failed to meet that burden.

Pennsylvania's No-fault Motor Vehicle Insurance Act, 40 P.S. §§1009.101, et. seq.[1] provided that where collateral benefits are available to an insured under the circumstances specified in 40 P.S. §1009.203, the insured is permitted a double recovery, i.e., once from each insurer. See also, *Steppling v. Pennsylvania Manufacturers Assistance Insurance Co.*, 328 Pa. Super. 419, 477 A.2d 515 (1984)

---

1. Repealed in 1984, the act nonetheless applies to the instant suit because plaintiff's injuries were sustained in 1982.

(double recovery permitted where no election made and premiums not reduced).

Section 1009.203 of the Pennsylvania's former No-fault Act reads:

"(b) The owner or operator of a motor vehicle *may elect* to provide for security in whole or in part for the payment of basic-loss benefits through a program, group, contract or other arrangement that would pay to or on behalf of the victim or members of his family residing with him or the loss of income, work loss, replacement services loss and survivors loss. *In all such instances,* each contract of insurance issued by an insurer shall be construed to contain a provision that all basic-loss benefits provided therein shall be in excess of any valid and collectible benefits otherwise provided through such program, group, contract or other arrangement as designated at the election of the owner or operator which shall be primary.

"(c) An insurer providing basic-loss benefits and tort liability in accordance with the provisions of subsection (b) above shall reduce the cost of such contract of insurance to reflect the anticipated reduction in basic loss benefits payable by the insurer *by reason of the election of the owner* or operator to provide substitute security." (emphasis added).

At trial, Prudential claimed that because there was apparently a reduction in Kershner's insurance premium because of the selection of Option 4, the court must also conclude as a matter of law that she *has selected* Massachusetts Mutual and Postmaster's as primarily responsible in accordance with 40 P.S. § 1009.203(c).

We disagree.

In *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563, 567 (1983), the court reiterated some well settled princi-

ples governing the interpretation of insurance contracts. It held that the task of interpreting a contract is generally performed by a court rather than by a jury, and the goal of the task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language, and lack of knowledge of a clearly drafted exclusion does not render the clause unenforceable. *Standard Venetian,* supra, rejecting dicta to the contrary in *Hionis v. Northern Mutual Insurance Co.,* 230 Pa. Super. 511, 327 A.2d 363 (1974).

We find that the coordination-of-benefits clause in plaintiff's insurance coverage, Option 4, quoted above, is an "exclusion" in a policy of insurance. *Miller v. Prudential Insurance Company of America,* 239 Pa. Super. 467, 362 A.2d 1017 (1976). Pennsylvania Courts have long held that a defense based on an exception or exclusion in an insurance policy is an affirmative one and the burden is cast upon the insurer to establish the facts which trigger the exclusionary language. *Rothstein v. Aetna Insurance Company,* 216 Pa. Super. 418, 268 A.2d 233 (1970); and *Weisman v. Prashker,* 405 Pa. 226, 175 A.2d 63 (1961).

In order for Prudential to refuse payment based on this exclusion or limitation, it must establish that the Massachusetts or the Postmaster's plan is a "program, group, contract or other arrangement" that fits the meaning of 40 P.S. §1009.203 and the policy language. By failing to introduce the policy into evidence or to prove that Kershner *made* a se-

lection, Prudential has failed to meet that burden.

As to the wage-loss claim, the uncontraverted evidence was that the Foundation has no "program, group, contract or other arrangement." Hence, Prudential's policy is not "excess" over any other program, either for medical expenses or for wage loss.

We believe our conclusion as to who bears the risk of nonproduction of evidence is also consistent with the insurance regulations of 31 Pa.Code §66.53 which set forth in detail the requirements and procedures for proper qualification of collateral benefits in no-fault policies. That section provides for a clear-cut procedure under which an insurer may receive documentation that the insured has, in fact, made a selection of alternate primary coverage.

As to Kershner's argument that the jury's fact finding against her on the receipt of the endorsement booklet was against the weight of the evidence, we are not shocked by the jury's finding. There was conflicting evidence on that issue.

## ORDER

And now, February 19, 1987, all motions for post-trial relief are hereby denied and judgment is hereby entered on the directed verdict in the amounts of $24,839.34 plus 18 percent interest from September 1, 1984, and $2,958 plus 18 percent interest from January 1, 1983.