Garabedian, Appellant, *v.* Metropolitan Life Insurance Co.

Argued October 25, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Francis I. Farley,* with him *John N. Ouzounian,* for appellant.

*John Bishop,* with him *Owen B. Rhoads, Dechert, Smith & Clark* and *Harry Cole Bates,* for appellee.

OPINION BY RHODES, J., April 12, 1939:

This is an action in assumpsit to recover disability benefits under supplementary contracts attached to and made part of two policies of life insurance issued by defendant to plaintiff. The trial judge directed a verdict for defendant, and plaintiff's motions for judgment in

his favor notwithstanding the verdict and for a new trial having been overruled, he has appealed.

The portions of the policies relevant to this controversy are as follows:

"Metropolitan Life Insurance Company...... Hereby Agrees, that upon receipt by the Company at its Home Office in the City of New York of due proof, on forms which will be furnished by the Company, on request, that the insured has ...... become totally and permanently disabled, as the result of bodily injury or disease occurring and originating after the issuance of said Policy, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit, and that such disability has already continued uninterruptedly for a period of at least three months, it will, during the continuance of such disability,

"1. Waive the payment of each premium falling due under said Policy and this Supplementary Contract, and,

"2. Pay to the insured ...... a monthly income of $10 for each $1000 of insurance. ......

"Notwithstanding that proof of disability may have been accepted by the Company as satisfactory, the insured shall at any time, on demand from the Company, furnish due proof of the continuance of such disability, but after such disability shall have continued for two full years the Company will not demand such proof more often than once in each subsequent year. If the insured shall fail to furnish such proof, or if the insured shall be able to perform any work or engage in any business whatsoever for compensation or profit, the monthly income herein provided shall immediately cease, and all premiums thereafter falling due shall be payable according to the terms of said Policy and of this Supplementary Contract."

It is not disputed that on June 15, 1936, appellant suffered tubercular hemorrhages of the lungs which

totally incapacitated him for a period of some months thereafter, or that on March 22, 1937, he partially resumed his regular employment. On or about November 7, 1936, appellant filed with appellee a claim under one policy, and on April 2, 1937, a similar claim under the other for the benefits provided by the above clause in cases of total and permanent disability. The claims were rejected, and this action in assumpsit was begun on June 22, 1937.

In his statement of claim filed on September 15, 1937, appellant averred that his disability began on June 15, 1936, and continued up to March 22, 1937, and his claim was for benefits during that period only.

Appellee, by its affidavit of defense, denied that appellant had ever been totally and permanently disabled as required by the terms and conditions of the contracts of insurance sued upon, and denied that appellant ever furnished due proofs of total and permanent disability as required. At the trial of the issue there was offered in evidence on appellant's behalf the written certificates of appellant's physician as to the nature of appellant's disability, consisting of forms furnished by appellee to be filled out and signed by the doctor. The language of the policies above quoted refers to such forms as those in which proof of total and permanent disability is to be provided. In these forms the following question appears: "13. If wholly disabled at present time, please give your opinion as to whether total disability will be permanent or temporary." Appellant's physician, in each instance, answered this question, "temporary."

At the trial three witnesses testified, appellant, his wife, and his physician. Appellee offered no evidence. Appellant and his wife did say, and at most could only say, that his disability for a time was total; for evidence as to the probable termination of the disability, the medical witness was relied upon. Dr. Sarkis said no more upon the witness stand than that appellant's

condition at the beginning of his disability was "very serious." He was not asked to express his professional opinion at the time as to the probable termination of disability. He admitted and acknowledged filling out the forms of proof given to appellee as to the nature of appellant's disability, in which he described its probable duration as temporary.

Counsel for appellant state in their brief that: "The question involved in this appeal is a very narrow one, and is substantially this:— When plaintiff has fulfilled the policy requirements of total disability, as a result of disease occurring after issuance of policy, which prevents him from engaging in any occupation for profit, and which disability has continued uninterruptedly for more than nine months ...... is defendant company relieved from payment because plaintiff's disability, on his own showing, is not 'Permanent'?"

Under the facts of this case, we think the question must be answered in the affirmative.

"The meaning of the phrase, 'totally and permanently disabled by bodily injury or disease, so that he is, and will be permanently, continuously and wholly prevented thereby from performing any work for compensation, gain or profit, and from following any gainful occupation,' as used in these policies, is not governed, or, indeed, even helped very much, by references to dictionary definitions of the word 'permanently,' or its use in workmen's compensation statutes. It is clear from other parts of the policy contracts that the word 'permanently' is not used in its extreme sense of absolute perpetuity, 'everlasting,' 'lifelong,' 'unchanged,' 'unending,' etc., but rather is used relatively in contradistinction from 'temporary' or 'transient.' This is apparent from the construction placed on the clause in other parts of the policies. For example, the policy provides that although the proof of total and permanent disability may have been accepted by the company as satisfactory, the insured shall on demand, but not

oftener than once a year, furnish to the company due proof of the *continuance* of such disability; and sets forth what results shall follow if it be found that 'the insured is able to perform any work or follow any occupation whatever for compensation, gain or profit' ": *Losnecki v. Mutual Life Ins. Company of New York,* 106 Pa. Superior Ct. 259, at page 262, 161 A. 434, at page 435. There is sufficient similarity between the provisions in the policy in the case at bar and those in the Losnecki case so that the term "permanently disabled," as interpreted in the Losnecki case, is applicable here. Consequently, the question before us is the sufficiency of appellant's evidence to meet the requirements already laid down by this court.

Although the furnishing of proof of disability was a condition precedent to the granting of disability benefits *(Equitable Life Assurance Society of the United States v. McCausland et ux.,* 331 Pa. 107, 111, 200 A. 85), appellee was not the final arbiter of what was "due proof"; whether or not it was sufficient to justify a recovery was a matter for the trial court *(Janney v. Scranton Life Ins. Co.,* 315 Pa. 200, 207, 173 A. 819). But neither in his proofs submitted to appellee nor by his evidence at the trial did appellant show a disability that was "permanent." Admittedly, he suffered a period of total disability. Not only did subsequent developments show that it was not permanent, however, but the record is barren of any evidence that it was ever considered to be so.

Health insurance was not the sole object of the policies in question, and there is no occasion to strain the words in order to make them afford a reasonable protection. See *Metropolitan Life Ins. Co. v. Foster,* 67 F. 2d 264. Where, as here, the proofs submitted to the insurer prior to the institution of suit, and the evidence adduced at the trial show that the disability was never considered more than temporary, and at the time of trial and even prior to the institution of suit

the insured had admittedly recovered, it would require unwarranted violence to the plain language of the policies to hold that the insured was ever "permanently disabled" within the meaning of the contract. See *Lyford v. New England Mutual Life Ins. Co. of Boston,* 122 Pa. Superior Ct. 16, 23, 184 A. 469.

In the briefs of counsel for both parties numerous cases have been cited, especially from other jurisdictions. The variations in the provisions of the respective policies, and in the evidence relating to the disability in each case demonstrate the difficulty and impracticability of declaring a universal principle intended to solve all such controversies. An extended analysis of these cases would serve no purpose; it is sufficient to say that the factors to which we have already referred provide a ground of differentiation in almost every instance. One of the closest cases which has come to our attention is that of *Grenon v. Metropolitan Life Ins. Co.,* 52 R. I. 453, 161 A. 229. There the provisions of the policy were identical with those of the policies here involved. The facts, very similar to those in the instant case, were as follows:

"December 3, 1928, plaintiff became ill with neurasthenia. This illness continued until July 3, 1929, when plaintiff recovered. During this seven months' illness it is admitted that plaintiff was unable to work. In May, 1929, plaintiff filed with defendant a statement of his claim for total and permanent disability containing the required certificate of his physician. In this certificate it was stated that plaintiff was not confined to his house; that he spent his time in the fresh air, was unable to work because of nervousness; that his disability was not permanent; that he was much improved when last seen by the physician on April 15, 1929, and 'prognosis is good.'

"Defendant refused to pay plaintiff's claim on the ground that the proof did not show total and permanent

disability. This action was begun by writ of summons issued April 7, 1931.

"The question is: Was the disability of plaintiff a total and permanent disability? As the facts are undisputed, the question is one of law, not of fact.

"Plaintiff's disability for seven months is admitted to have been total. This disability lasted only for a limited time, was not permanent, and was never considered to be so."

A verdict was directed for defendant in the court below; the Supreme Court of Rhode Island dismissed plaintiff's exception thereto, and directed entry of judgment on the verdict, saying:

"The provision for the beginning of payments was clearly intended to secure to the insured the benefits of the policy when there was doubt whether the total disability was permanent.

"In the case at bar, there was and is no doubt or uncertainty as to the permanency of the disability. The language of the policy is not technical, it is clear, and does not warrant two interpretations. As there was no permanent disability plaintiff cannot recover."

See, also, *Ginell v. Prudential Ins. Co. of America,* 237 N. Y. 554, 143 N. E. 740 (reversing 205 App. Div. 494, 200 N. Y. S. 261, and adopting a dissenting opinion); *Brod v. Detroit Life Ins. Co.,* 253 Mich. 545, 235 N. W. 248; *Lewis v. Metropolitan Life Ins. Co.* (Court of Appeals of La.), 142 So. 262; *Hawkins v. John Hancock Mutual Life Ins. Co.,* 205 Iowa 760, 218 N. W. 313; *Meyers v. Metropolitan Life Ins. Co.,* 85 Pittsburgh Legal Journal 19.

Assignments of error are overruled.

Judgment is affirmed.