## Galvin, Appellant, *v.* Occidental Life Insurance Company of California.

Argued April 15, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Herbert M. Lurie,* with him *Stokes, Lurie & Tracy,* for appellant.

*John H. Scott, Jr.,* with him *Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY MONTGOMERY, J., June 17, 1965:

Plaintiff-appellant's husband was killed in the course of his employment in the milk industry of the Greater Pittsburgh area. He had been a member of the Milk and Ice Cream Salesmen, Drivers, and Dairy Employees Local No. 205, and was qualified for insurance coverage under a policy of group insurance dated October 18, 1954, issued by the Occidental Life Insurance Company of California, defendant-appellee, to The Trustees of the Greater Pittsburgh Dairy Industry. The policy provided several coverages: (a) ordinary life insurance, (b) accidental death and dismemberment insurance, (c) disability due to pregnancy, and (d) disability due to accident and sickness other than pregnancy.

Following her husband's death appellant made claim for benefits payable under the ordinary life coverage and received same in the sum of $5,000. She made a further claim for an additional $5,000 under the accidental death and dismemberment coverage, but payment of this was refused by the appellee. Suit was thereupon entered for the collection of this additional amount and proceeded to trial before judge and jury. After taking testimony the lower court dismissed the jury and as a matter of law rendered judgment for the defendant, basing the judgment on its interpretation of the policy. This appeal followed.

64

In refusing payment defendant relies on paragraph thirteen of the policy which reads as follows: "13. General Limitations. Unless exceptions to the following General Limitations are made under the Insurance Schedule Provisions, the policy does not insure and no benefits shall be payable for or on account of: (1) any bodily injury or sickness for which the person on whom claim is presented is not under the regular care of a licensed physician and surgeon; (2) dental services of any kind; (3) eye refractions; (4) any bodily injury or sickness for which the person on whom claim is presented has or had a right to compensation under any Workmen's Compensation or Occupational Disease law; (5) any bodily injury which arises from or is sustained in the course of any occupation or employment for compensation, profit, or gain."

These general limitations were specifically excepted from ordinary life coverage but not from the other coverages. It is defendant's contention that they are applicable to all coverages except that of ordinary life insurance.

In construing the policy it must be read in its entirety and the intention of the parties gathered from a consideration of the entire instrument. *Smith v. Cassida,* 403 Pa. 404, 169 A. 2d 539 (1961), and it must be construed in a way as to give effect to all of its provisions. *Quigley v. Western and Southern Life Insurance Company,* 136 Pa. Superior Ct. 27, 7 A. 2d 70 (1939).

The policy was issued on an application, made part of the contract, which provided that the "Accidental Death and Dismemberment for Individuals only" was "Non-Occupational only." Considering the application alone, it would seem reasonable to conclude that the general limitations were applicable to the accidental death and dismemberment coverage. Plaintiff points, however, to a heading that precedes said clause thir-

teen, i.e., "Group Policy Provisions Applicable to Disability Insurance Only," and argues that the word disability was not intended to mean death and therefore the general limitations have no application to her claim.

We must recognize that the word disability has a reasonably definite meaning implying an animate or living object, 26A C.J.S. Disability (p. 960), and in the common acceptance of the term total disability does not express the same meaning as death. 25 C.J.S. Death §1. Disability insurance consists of all forms of insurance relating to the partial or total disability of the insured as distinguished from death. 44 C.J.S. Insurance §12. However, we are not privileged to use the general definition of disability but must determine how it was intended by the parties to this insurance contract. The intention of the parties is paramount and in construing such a contract the Court will adopt the interpretation which, under all of the circumstances of the case, ascribes the most reasonable, probable, and natural intention of the parties, bearing in mind the objects manifestly to be accomplished. *Unit Vending Corporation v. Lacas,* 410 Pa. 614, 190 A. 2d 298 (1963). Dictionary definitions of a word must give way to the use made of the word in a policy. *Garabedian v. Metropolitan Life Insurance Co.,* 135 Pa. Superior Ct. 320, 5 A. 2d 379 (1939). However, if the meaning of a written document is ambiguous or its meaning doubtful in determining the intention of the parties, the writing must be construed most strongly against the party drafting it and the interpretation which makes a rational and probable agreement must be preferred. *Unit Vending Corporation v. Lacas,* supra.

In resolving this issue we note that the contract as evidenced by the "Certificate of Group Insurance" attached to the complaint contains fourteen numbered paragraphs of which the first twelve appear to be generally applicable to all coverages. Following number

twelve of these paragraphs, is spelled out in bold type the aforesaid heading, "Group Policy Provisions Applicable to Disability Insurance Only." This is followed by clauses numbered thirteen and fourteen, thirteen being previously stated and fourteen relating to pregnancy. Following fourteen there are fourteen *unnumbered* other clauses under the heading, "Additional Provisions Applicable to Group *Disability* Insurance Only." (Emphasis supplied) One of these clauses reads, "Benefits for *loss of life* are payable to the individual's beneficiary, if surviving the individual, and otherwise to the estate of the insured individual. All other benefits are payable to the insured individual." (Emphasis supplied) Thereafter follows three paragraphs which describe the benefits from three of the coverages of the policy under the following headings and in the following order: (1) Accident and Sickness Benefits for Individuals; (2) Pregnancy Benefits for Individuals; (3) Accidental Death and Dismemberment Benefits for Individuals.

Lastly, beginning on a separate page and not immediately following the clause relating to accidental death, etc., we find the provisions for ordinary life insurance for individuals which expressly excludes the application of clause thirteen aforesaid. This section contains numerous provisions particularly applicable to the life insurance benefits as distinguished from accident and sickness, and establishes a complete system for change of beneficiary, assignment, optional settlement, notices, payment of proceeds, wholly independent of the previous provisions of the policy except the general provisions enumerated one to twelve aforesaid. Some of the provisions previously mentioned are duplicated although expressed in slightly different language.

After careful consideration of the certificate of insurance including the application, we conclude that

the provisions of clause thirteen are applicable to the coverage for accidental death and dismemberment. Our reasons are as follows:

First, the application provides that the coverage against accidental death and dismemberment shall be nonoccupational.

Second, the contract is so composed as to indicate that the ordinary life insurance coverage was separate and distinct from the other three coverages which are grouped together.

Third, by references to death claims in the unnumbered paragraphs following the heading "Additional Provisions Applicable to Group Disability Insurance Only," the parties to the contract clearly express their intention to include accidental death claims under the heading of disability insurance, thereby enlarging the definition of the word disability.

Fourth and last, there is in evidence defendant's Exhibit B, being a bulletin issued to the individual employes covered by the policy, which was prepared for distribution and approved by the defendant and the trustees aforesaid, which clearly shows that accidental death and dismemberment claims must be nonoccupational:—"ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE FOR EMPLOYEES No benefit shall be payable if the loss shall directly or indirectly, wholly or partly, result from . . . (6) any bodily injury or sickness, fatal or otherwise, for which you have or had a right to compensation under any Workmen's compensation or Occupational disease law, or (7) any bodily injury, fatal or otherwise, which arises from or is sustained in the course of any occupation or employment for compensation, profit, or gain."

If there is any uncertainty as to the intention of parties to a contract (which we do not believe exists in this case) the law normally accepts the interpretation

adopted by the parties. 8 P.L.E., Contracts, §141, and cases cited therein.

Since it is admitted that appellant's husband met his death in the course of his occupation, no recovery is allowable under the accidental death and dismemberment provision of the policy.

Judgment for defendant affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

I am not convinced that the parties so clearly expressed their intention to include accidental death claims under the heading of disability insurance, thereby enlarging the definition of the word disability. In my opinion, an insurance contract which contains such an ambiguity should be construed most strongly against the company which drafted it.

JACOBS, J., joins in this dissenting opinion.