Robert M. DiIENNO and Catherine L.
DiIenno, Plaintiffs,

v.

NATIONWIDE MUTUAL INSURANCE
COMPANY, an Ohio Corporation,
Defendant.

Civ. A. No. 85–372–JLL.

United States District Court,
D. Delaware.

April 8, 1986.

David Roeberg and Frederick T. Haase, Jr., of Roeberg & Associates, Wilmington, Del., for plaintiffs.

Wayne N. Elliott and Michael P. Kelly, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for defendant.

LATCHUM, Senior District Judge.

On June 24, 1985, the plaintiffs, Robert M. DiIenno and Catherine L. DiIenno, both citizens of Pennsylvania, filed this action against Nationwide Mutual Insurance Company ("Nationwide"), an Ohio corporation, alleging that Nationwide is liable for Delaware's personal injury protection ("PIP") benefits to Robert M. DiIenno in the amount of $15,000 and to Catherine DiIenno in the amount of $11,231.45, and that the plaintiffs are collectively entitled to underinsured motorists benefits from the defendant in the amount of $100,000. (Docket Item ["D.I."] 1.)[1] As an affirmative defense, presented to this Court on August 15, 1985, the defendant argued that the plaintiffs' claim is based on a "stacking" of separate coverages, which is prohibited by their insurance policy. (D.I. 4, ¶ 14.) The plaintiffs moved to strike the defendant's affirmative defense and for summary judgment that Nationwide is liable under supplementary uninsured coverage to the plaintiffs individually for $200,000 and for Delaware PIP benefits. (D.I. 8.) The defendant, in turn, moved for summary judgment on all issues on December 12, 1985. (D.I. 14.) The Court will rule only on the defendant's motion for summary judgment.[2]

## I. FACTS

The plaintiffs in this action, Robert M. DiIenno and Catherine L. DiIenno, who are married, purchased an automobile insurance policy on February 25, 1984 from Nationwide for their two motor vehicles, a 1981 Volkswagen pickup truck registered in Delaware, and a 1979 Toyota Corolla, a Pennsylvania-registered vehicle. (D.I. 10, ¶¶ 2–5.) For each vehicle, the policy provided bodily injury liability coverage of $100,000 per person and $300,000 for each occurrence and uninsured and underinsured coverage of $100,000 for each person and $300,000 for each occurrence as well as PIP (no-fault) benefits under the Pennsylvania No-Fault Motor Vehicle Act. (D.I. 12, ¶ 3.) The policy expired July 8, 1984. (*Id.* at ¶ 6.)

On May 12, 1984, the plaintiffs were riding in their Volkswagen in the State of Delaware near the Pennsylvania state line when a vehicle operated by Robert M. Shockley, proceeding in the opposite direction, suddenly turned left in front of the plaintiffs' vehicle and collided with it. Both plaintiffs were injured and hospitalized, but Robert M. DiIenno's injuries were serious and resulted in hospitalization for approximately five months until October 5, 1984. (D.I. 10, ¶ 8.)

The plaintiffs filed an action against Shockley, a Maryland resident, to recover damages for their injuries.[3] Robert DiIenno incurred medical expenses in the amount of $83,086.39 for injuries sustained in the collision. Catherine DiIenno's medical expenses were $9,931.45 and her lost wages were $1,300.00. (D.I. 10, ¶ 10.) Shockley, who was also insured by Nationwide, had liability insurance coverage of $100,000 per person and $300,000 for each occurrence. (D.I. 12, ¶ 4.) Before the case came to trial, the parties settled their claims arising out of Robert M. DiIenno's bodily injuries, which included his claim for personal injuries and his wife's claim for loss of consortium, for the limits of Shock-

---

1. Jurisdiction arises under 28 U.S.C. § 1332. Venue is based on 28 U.S.C. § 1391(c). Nationwide is qualified to do business in Delaware. (D.I. 4, ¶ 2.)

2. The Court will not specifically address the plaintiffs' motion to strike the defendant's affirmative defense since the issues underlying that motion are central to the plaintiffs' main claims and therefore may be fully disposed on the defendant's motion for summary judgment on all issues.

3. That case was filed as *Robert M. DiIenno and Catherine DiIenno v. Kenneth P. Shockley*, C.A. No. 84–564 MMS (D.Del.1984).

ley's coverage for the two claims, $100,000. (D.I. 10, ¶ 9.)

## II. ANALYSIS

By their motions, the plaintiffs identify three issues for disposition. The plaintiffs have moved to strike (D.I. 8, ¶ 1) the defendant's second affirmative defense that the plaintiffs' claim for underinsured motorists benefits for $100,000 is a "stacking" of coverage and is prohibited by the terms of the insurance policy. (D.I. 4, ¶ 14.) In essence, the issue presented by this motion is whether the policy is ambiguous such that the plaintiffs have an alleged separate underinsured coverage which can be stacked on top of the $100,000 already collected. The plaintiffs then argue that Catherine DiIenno can claim loss of consortium separately from her husband and, in addition, can satisfy this claim from the total of $200,000 in underinsured benefits per person they allege each has available. Finally, the plaintiffs allege that each is separately entitled to personal injury protection ("PIP") benefits *under Delaware law.* (D.I. 9 at 26–27.)

The defendant opposes the plaintiffs' motions and has made its own motion for summary judgment pursuant to Fed.R. Civ.P. 56 on the grounds that there are no issues as to any material facts. (D.I. 14.) The Court will address the three issues raised by the plaintiffs in ruling on the defendant's motion for summary judgment. The remaining issue arising from the complaint is whether Nationwide is liable for Pennsylvania PIP benefits and, if so, in what amount. The Court will address this issue last.

On a motion for summary judgment, the moving party must demonstrate that there is no issue as to any material fact in the case and is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 156, 90 S.Ct. 1598, 1607, 26 L.Ed.2d 142 (1970). In ruling on such a motion, the Court must draw all inferences from the affidavits, pleadings, and other materials in the record in a light most favorable to the non-moving

party. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

A. *Plaintiffs' Claim For Per Person Underinsured Motorists Benefits Of $200,000*

The plaintiffs present a very confusing and complicated argument that they are entitled to $200,000 in underinsured motorists benefits per person. In a nutshell, the plaintiffs argue that Nationwide's policy's Declarations and the attached Endorsement 1620, entitled "Supplementary Uninsured Motorists Coverage (for bodily injury caused by underinsured motorists)," created liability to the plaintiffs beyond the $100,000 already paid through Shockley's coverage because payments under underinsured coverage are not restricted by the anti-stacking language contained in the uninsured motorists coverage section. The plaintiffs allege that Endorsement 1620 sets forth a limit of supplementary underinsured motorists coverage of $100,000 per person on each vehicle for a total of $200,000 per person, after adding the coverage on the two vehicles insured under the policy. (D.I. 9 at 15.) Endorsement 1620 purportedly creates two supplementary underinsured motorists coverages because "two separate premiums were charged therefor, each with a total limit of $100,000 per person." (D.I. 9 at 15–16.)

The crux of the plaintiffs' argument is that neither the Endorsement nor any other portion of the policy contains a limitation "clearly worded and conspicuously displayed" that limits Nationwide's liability with respect to the Endorsement. (D.I. 9 at 16.) Because Endorsement 1620 is central to the plaintiffs' argument here it merits quotation in full:

> Endorsement 1620
>
> supplementary uninsured motorists coverage (for bodily injury caused by underinsured motorists)
>
> Please attach this important addition to your auto policy.

This endorsement amends your policy's Uninsured Motorists coverage.

An uninsured motor vehicle includes an underinsured motor vehicle. This is one for which there are bodily injury liability coverage or bonds in effect. Their total amount, however, is less than the limits of this coverage. These limits are shown in your policy's Declarations.

The limits of this coverage and/or any amounts payable under this coverage will be reduced by:

a. any amount paid by or for any liable parties.

b. any sums paid or payable under any workmen's compensation, disability benefits, or similar laws.

No payment will be made until the limits of all other liability insurance and bonds that apply have been exhausted by payments.

This endorsement replaces any other endorsement entitled Supplementary Uninsured Motorists Coverage.

The endorsement is issued by the Nationwide Mutual Insurance Company or Nationwide Mutual Fire Insurance Company, whichever has issued the policy to which it is attached.

(D.I. 10, Policy, Endorsement 1620.)

"Limits of Payment," which forms part of the section on uninsured motorists coverage, lists the conditions placed on benefits for uninsured motorists coverage:

Our obligation to pay uninsured motorist losses is limited to the amounts per person and per occurrence stated in the attached Declarations. The following conditions apply to these limits:

1. Limits shown for any one person are for all legal damages claimed by anyone for bodily injury or loss of services of one person as a result of one occurrence. For each such occurrence, the total limit of our liability shown is for all damages sustained by two or more persons.

2. The insuring of more than one person or vehicle under this policy does not increase our Uninsured Motorists payment limits. Limits apply to each insured vehicle as stated in the Declara-

tions. In no event will any insured be entitled to more than the highest limit applicable to any one motor vehicle under this or any other policy issued by us.

3. Any amount payable to or for the insured under this coverage will be reduced by any sums paid by or for any liable parties, and by any sums paid or payable under workmen's compensation, disability benefits, or similar laws.

4. Any amount payable to or for an insured under this coverage will be reduced by the amount of any Personal Injury Protection paid or payable, and any benefits that would have been paid or payable except for a deductible provision.

5. Any payment under this coverage to or for an insured will reduce the amount of damages the insured may be entitled to recover under the Bodily Injury Liability coverage of this policy.

(*Id.* at 11–12.)

The plaintiffs argue that the language of the limits of payments section "refers only to uninsured motorists losses and not to underinsured motorists losses or supplementary uninsured motorists losses." (D.I. 9 at 18.) In the limits of payment section for uninsured coverage neither the phrase "supplementary uninsured motorists" nor the phrase "underinsured motorists" appears. The section refers throughout only to "uninsured motorists losses." Further, the plaintiffs argue, the defendant did not clearly and conspicuously state that this limiting language also applied to supplementary uninsured motorists coverage in Endorsement 1620. To buttress this argument, the plaintiffs point to an intent by Nationwide to set out limitations to its supplementary uninsured motorists coverage only in Endorsement 1620. For example, Nationwide repeats limitations in this endorsement that appear in the limits of payment section such as reduction by amounts paid under workmen's compensation, disability benefits, or similar laws. (*Id.* at 19–20.) This means, argue the plaintiffs, that Nationwide did not intend its limits of payment section to limit its liability under

supplementary underinsured motorists coverage because any limitations to such coverage are to be found only in Endorsement 1620.

The plaintiffs do not and cannot contend that the uninsured motorists coverage of $100,000 per person and $300,000 per occurrence can be stacked because they concede that that section's limiting language is effective. (D.I. 9 at 18.) Instead, they attempt to convince this Court that Endorsement 1620 actually represents coverage additional to the uninsured motorist coverage for which the plaintiffs have paid a premium. In effect, the plaintiffs are arguing that the supplementary uninsured motorists coverage endorsement created a $100,000 limit *in addition* to the uninsured motorists coverage. The defendant counters this with the argument that the policy in its entirety clearly prohibits stacking of both uninsured and underinsured motorists coverages.

■ The basic issue, then, is whether Endorsement 1620 indeed creates separate coverage for the plaintiffs, which must be limited and conditioned separately from other sections. To reach this question, the Court must determine whether the Endorsement, the provisions of the policy, and how the Endorsement relates to these provisions, are ambiguous. If a provision of an insurance contract is ambiguous, then it should be construed in favor of the insured against the insurer. *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (Pa.Supr. 1983). However, where the language of the contract is clear and unambiguous, the Court is required to give effect to the language. *Id.* The Pennsylvania courts determine whether a provision is ambiguous only "if reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning." *Patterson v. Reliance Ins. Cos.*, 332 Pa.Super. 592, 481 A.2d 947, 949 (1984); *Adelman v. State Farm Mutual Auto. Ins. Co.*, 255 Pa.Super. 116, 386 A.2d 535, 538 (1978). The procedure is well-established in Pennsylvania for construing insur-

ance policies. The policy must be read in its entirety and the intention of the parties gathered from a consideration of the entire agreement in a way to give effect to all of its provisions. *Eberhart v. Nationwide Mutual Ins. Co.*, 238 Pa.Super. 558, 362 A.2d 1094, 1097 (1976); *Galvin v. Occidental Life Ins. Co. of Calif.*, 206 Pa.Super. 61, 211 A.2d 120, 122 (1965).

Considering the DiIenno policy in its entirety, the meaning of Endorsement 1620 and its relation to the policy is not ambiguous. The Endorsement itself states that its effect is to *amend* the policy's uninsured motorists coverage. The ordinary and common understanding of "amend" is to change or alter something. The changed document *incorporates* the amendment; the amendment is part of the main document. This is the effect of Endorsement 1620. The only purpose of the Endorsement, which it states explicitly, is to redefine the term "uninsured motor vehicle" in the main part of the policy to include "underinsured motor vehicle." It then proceeds to define the latter term. The Endorsement does nothing more. No underinsured coverage, separate and in addition to uninsured coverage, was created.

The plaintiffs' assertion that the limitations of coverage listed in the Endorsement indicate that those are the only limitations applicable to the Endorsement also is without merit. "It is commonplace in insurance contracts for particular endorsements, designed to insure exclusion of specific areas of potential liability, to overlap with broader exclusionary clauses found elsewhere in the contracts." *Parma Seed, Inc. v. General Ins. Co. of America*, 94 Idaho 658, 496 P.2d 281, 285 (Supr.1972). Furthermore, it is readily apparent from the policy's Declarations page that only one premium is being paid for the combined uninsured-underinsured motorists coverage. (D.I. 10, Policy Declarations.)

■ The Court thus finds as a matter of law that the effect of the limits of payment section in the uninsured motorists coverage section of the plaintiffs' policy is to prevent stacking of their underinsured

motorists coverage by adding the per person limits for each vehicle. The provision reads: "In no event will any insured be entitled to more than the highest limit applicable to any one motor vehicle under this or any other policy issued by us." (D.I. 10, Policy at pp. 11–12.) That provision also reduces the uninsured or underinsured coverage "by any sums paid by or for any liable parties, or by any sums payable under workmen's compensation, disability benefits, or similar laws." (*Id.* at p. 12.) The plaintiffs were potentially entitled to underinsured benefits in the amount of $100,000. However, the bodily injury liability of Shockley's policy was $100,000, which already has been paid to the plaintiffs. Thus, the plaintiffs are not entitled to any underinsured benefits from Nationwide. This finding makes unnecessary consideration of the plaintiffs' claim that Robert DiIenno is entitled to $200,000 of underinsured motorists coverage and that Catherine DiIenno is entitled to $200,000 of underinsured motorists coverage for loss of consortium due to her husband's physical injuries.

B. *PIP Benefits Under Delaware Law*

■ The plaintiffs present an interesting argument why they should receive the benefit of the Delaware PIP coverage under their policy with Nationwide. (D.I. 9 at 9.) The plaintiffs argue that Nationwide was authorized to transact and did transact the business of motor vehicle liability insurance in Delaware. Under 21 *Del.C.* § 2118(j), insurance companies authorized to do business in Delaware are required to provide Delaware PIP coverage for Delaware registered vehicles, such as the plaintiffs' 1981 Volkswagen. The plaintiffs therefore should be protected by the requirements of that statute.[4] It is true that on its face, the statute deems that all Delaware-registered vehicles shall be insured under the

requirements of Delaware's PIP statutory provisions. However, this Court has held that Section 2118(j) was not intended by the Delaware Legislature to be an eligibility provision. *Deel v. Rizak*, 474 F.Supp. 45, 48 (D.Del.1979). Moreover, the plaintiffs have already conceded that this case is being decided under Pennsylvania law. (D.I. 9 at 9.) The Pennsylvania no-fault statute in effect at the time of the accident contains a provision concerning choice of law. That provision provides in pertinent part:

(c) Applicable law—

(1) The basic loss benefits available to any victim or to any survivor of a deceased victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance in effect in the state domicile of the victim on the date when the motor vehicle accident resulting in injury occurs. If there is no such state no-fault plan in effect or if the victim is not domiciled in any state, then basic loss benefits available to any victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance, if any, in effect in the state in which the accident resulting in injury occurs.

40 *Pa.S.* § 1009.110(c)(1) (repealed Feb. 12, 1984, effective Oct. 1, 1984). Plaintiffs were domiciled in Pennsylvania at the time of the accident. (D.I. 10, ¶ 2.) Thus, any no-fault personal injury benefits available to the plaintiffs must be determined according to Pennsylvania no-fault law. In addition, the plaintiffs' policy itself stated that it "provides Basic Personal Injury Protection in accordance with the Pennsylvania No-Fault Motor Vehicle Insurance Act." (D.I. 10, Policy at p. 6.)

■ The plaintiffs raise the argument for the first time in their Reply Brief supporting their two motions before this Court

---

**4.** 21 *Del.C.* § 2118(j) reads as follows:

Every insurance company authorized to transact the business of motor vehicle liability insurance in this State shall file with the Insurance Commissioner as a condition of its continued transaction of such business within

the State a form approved by the Insurance Commissioner stating that its motor vehicle liability policies, on Delaware registered vehicles wherever issued, shall be deemed to provide the insurance required by this section.

(D.I. 16 at 19) that this was a contract between the Delaware Insurance Commissioner and Nationwide with the plaintiffs as third party beneficiaries because of Nationwide's license to transact business in Delaware. The plaintiffs entered into a private contract for insurance with the defendant. The state enters into that contract only as a regulator to ensure responsible transaction of automobile insurance. At most, assuming the existence of a contract between the State of Delaware and Nationwide, the plaintiffs are only incidental, not intended, beneficiaries of the contract. This is true under both Pennsylvania and Delaware law. Nothing in the statute or in the surrounding circumstances manifests an intention by either principal party to grant plaintiffs some right against Nationwide as promisor. *Murphy v. Villanova University*, 547 F.Supp. 512, 521 (E.D.Pa.1982); *Pennsylvania Liquor Control Board v. Rapistan, Inc.*, 472 Pa. 36, 371 A.2d 178, 182 (Supr.1976); *Pajewski v. Perry*, 363 A.2d 429, 431–21 (Del. Supr.1976); Restatement (Second) of Contracts § 313(2).

### C. *Payment of Pennsylvania PIP Benefits*

The only question remaining is whether there is a material issue of fact concerning the defendant's liability for Pennsylvania PIP benefits. In their complaint, the plaintiffs allege that they are entitled to PIP benefits in the amount of $15,000 for Robert DiIenno and $11,231.45 for Catherine DiIenno. (D.I. 1, ¶ 11.) In their affidavit dated October 30, 1985, the plaintiffs claim that Nationwide has paid no PIP benefits, relying on Endorsement 1235A of the policy.[5] However, in the affidavit submitted by Nationwide dated December 12, 1985, Nationwide contends that it has paid

$1,119.50 and $705.30 in PIP benefits to Catherine and Robert DiIenno, respectively. (D.I. 12, ¶¶ 6–7.) As the record now stands, there is a material issue of disputed fact as to what benefits the plaintiffs are entitled to and how much the defendant has disbursed to them. The Court will thus deny the defendant's motion for summary judgment on the issue of Nationwide's liability for Pennsylvania PIP benefits. Summary judgment will be granted for the defendant on all other issues.

A judgment will be entered in accordance with this Opinion.

---

**5.** Endorsement 1235A reads in pertinent part:

This endorsement limits benefits for you and your relatives under your Pennsylvania Personal Injury Protection. Benefits for professional medical treatment and care, and for work loss, are limited to the amounts over and above similar benefits available to you or your relatives.

We will pay benefits for professional medical treatment and care and for work loss, only over and above all amounts paid or payable to or for you or your relatives under the following: any other *disclosed* insurance, service, benefits, or reimbursement plans that provide similar direct benefits for motor vehicle accidents without regard to fault.

(D.I. 10, Policy, Endorsement 1235A.)