548

547 A.2d 1198

**Leonard J. FASSETTE, Individually and as Administrator of the Estate of Mattie Fassette, Deceased, Appellant,**

v.

**ERIE INSURANCE EXCHANGE, Appellee.**

Superior Court of Pennsylvania.

Argued April 13, 1988.

Filed Sept. 6, 1988.

Cathy M. Lojewski, Northeast, for appellant.

underlying claim lacks arguable merit, his request for relief under the PCHA would fail in any circumstance.

Warren T. Jones, Erie, for appellee.

Before ROWLEY, DEL SOLE and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The appeal in this case involves a claim for death benefits, based upon a policy of automobile insurance. The Plaintiff–Appellant instituted suit on his own behalf and as Administrator of the Estate of his deceased wife, seeking such benefits as a result of his wife's death in a motor vehicle accident in November, 1984. The trial court entered an Order granting a Motion for Summary Judgment filed by Defendant–Appellee Erie Insurance Exchange, and dismissing a Cross–Motion for Summary Judgment submitted by the Appellant.

This action was commenced in early April, 1986, by the filing of a class action Complaint by the Plaintiff. Therein, he sought the recovery of a death benefit which he claimed under certain provisions of an insurance policy issued to him by the Defendant. In addition to seeking a recovery on grounds of an alleged breach of contract, the Plaintiff also asserted a claim for punitive damages. The Defendant filed preliminary objections with regard to the claim for punitive damages. Such preliminary objections were granted by the trial court, as to the punitive damage claim, and the Defendant thereafter filed an Answer and New Matter. The Plaintiff filed an Answer to the New Matter. In March, 1987, the Defendant filed a Motion for Summary Judgment, and on April 20, 1987, the Plaintiff filed a Cross–Motion for Summary Judgment. After hearing argument and reviewing briefs submitted by the parties, the trial court entered an Order granting the insurer's Motion for Summary Judgment, and denying the Plaintiff's Cross–Motion.

Although his Complaint recites that this action was instituted by the Plaintiff as a class action, he did not file a Motion for Class Certification until after argument on the Motions for Summary Judgment before the trial court. The trial court never ruled on the class action certification

request, apparently because of its granting of the defense Motion for Summary Judgment. No issue was raised on this appeal by either party concerning the propriety of the Appellant's request for class certification in this action. Also, the trial court's rejection of the Plaintiff's punitive damage claim is not challenged on appeal.

The record indicates that on August 3, 1984, the Defendant insurer issued an automobile insurance policy to the Plaintiff. The policy consisted of three parts. The first was a twelve page standard form policy. The second part was a "Declarations" page. The final part, an "Auto Endorsement", was entitled "PERSONAL INJURY PROTECTION (PIP) NO–FAULT COVERAGE—PENNSYLVANIA".

The Defendant maintains that it paid all benefits due on the policy as a result of the death of the wife of the Plaintiff, including medical expenses, "survivor's loss" benefits in the amount of $5,000.00, and funeral benefits in the amount of $1,500.00. Such benefits are provided for in the "Auto Endorsement" provision of the policy which details the PIP No–Fault coverages. It is the contention of the Plaintiff that he is entitled to recover additional death benefits under the policy, in accordance with provisions set forth in the initial standard form policy section of the insurance agreement. In that regard, he points out the following provision, set forth on page 6 of that first section of the agreement:

X Death Benefit

If _you_ die as the result of bodily injury in an accident under this coverage, _we_ will pay any balance remaining from the limit of protection after paying the medical expenses, up to a maximum of $5,000. _We_ will pay this benefit to the surviving kin we choose or to the victim's estate. The X amount of Death Benefit will never be less than $1,000 nor more than $5,000 [1].

1. The word "you" is defined elsewhere in the policy to include both the insured and his or her spouse. "We" is defined as the insurer.

We will pay this benefit provided death occurs within one year of the date of the accident, the victim was at least one year old at the time of the accident and there are surviving kin. Surviving kin means a spouse residing in the same household or any parent, child or dependent. (emphasis in original)

The Plaintiff urges that he is entitled to an additional payment of a Five Thousand Dollar ($5,000.00) death benefit under the provisions of the initial policy section quoted above. He argues that the provisions calling for such payment are different coverages than those which are provided in the No–Fault sections of the policy.

Further, he points out other parts of the policy which purportedly lend weight to his claim. In that regard, he initially notes the following provision, which is set forth on the front page of the entire policy:

We call this a PIONEER Policy because it contains many XTRA PROTECTION FEATURES developed by the ERIE. Wherever an "X" appears in the margin of this Policy, YOU receive XTRA PROTECTION, either as additional coverage or as a coverage that is not in most auto policies.

He directs our attention to the fact that an "X", designating additional coverage or "xtra protection provisions", is placed next to the section relating to death benefits, quoted above, upon which he relies in asserting his claim. He cites other sections of the basic policy, the declaration page, and the endorsement, which allegedly support his contention that the "survivor's loss" benefit which he received was a different type of benefit from the "Death Benefit" detailed in the initial part of the policy, to which he claims additional entitlement in this action.

It is the position of the Plaintiff that the provisions of the policy are clear and expressly stated in such a manner as should entitle him to a recovery of the additional benefit he seeks in this case. In the alternative, he maintains that if there is any ambiguity or lack of clarity, such a condition

must be resolved in his favor and against the insurer, under prevailing law.

In our consideration of this case, several rules are applicable. First, it is clear that the interpretation and construction of an insurance policy is a question of law, and within the province of the court. *Patterson v. Reliance Insurance Companies*, 332 Pa.Super. 592, 481 A.2d 947 (1984); *Garber v. Travelers Insurance Companies*, 280 Pa.Super. 323, 421 A.2d 744 (1980). Any ambiguity in the insurance contract must be construed in favor of the insured and against the insurer. *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 469 A.2d 563 (1983). A provision of a policy may be considered ambiguous only if reasonably intelligent persons, on considering it in the context of the entire policy, would honestly differ as to its meaning. *Celley v. Mutual Benefit Health & Accident Association*, 229 Pa.Super. 475, 481–82, 324 A.2d 430, 434 (1974). It is not the function of the court to rewrite a policy or give its terms a construction which differs from their plain meaning. *Pennsylvania Manufacturers Association Insurance Co. v. Aetna Casualty & Surety Insurance Co.*, 426 Pa. 453, 233 A.2d 548 (1967). Our goal in interpreting an insurance contract is to determine the reasonable expectations of the parties. *Huffman v. Aetna Life & Casualty Co.*, 337 Pa.Super. 274, 486 A.2d 1330 (1984). In trying to determine the intention of the parties through a construction of the policy, the policy must be read in its entirety, with a construction, if possible, which will give effect to all of the provisions of the policy. *Galvin v. Occidental Life Insurance Co. of California*, 206 Pa.Super. 61, 211 A.2d 120 (1965).

A reading of the policy in issue in this case, in its entirety, leads us to the conclusion that the trial court did not err in denying the additional death benefit claim asserted by the Appellant. The second page of the standard form policy, which forms the first part of the three part insurance agreement, states the following under the "DEFINITIONS" section:

"Declarations" means the sheet which shows the coverages you have chosen for each car we insure. It also shows the premium for those coverages and the limits of protection. *Your* policy is not complete without this sheet. (emphasis in original)

Page 3 of the same part of the policy, under the heading "WHEN AND WHERE THE POLICY APPLIES", states, in pertinent part: "An Endorsement tells *you* that the policy has been changed." (emphasis in original) Page 11 of the same standard policy section of the insurance contract also contains a provision providing guidance. Under a section heading entitled "HOW YOUR POLICY MAY BE CHANGED", it declares: "This policy may be changed by endorsement issued by *us.*" (emphasis in original) On the next page of the same part of the policy, under the heading "Agreement", the policy language states that the insurer agrees " ... to provide the coverages you have chosen. *Your* choices are shown on the *Declarations,* which are a part of this policy." (emphasis in original)

The aforesaid provisions indicate that the intent of the parties was that the coverage would be as delineated on the declarations page and in any endorsements, in any circumstances where the latter might differ from the coverages discussed in the initial standard policy pages which form the first part of the agreement. This conclusion is buttressed by a recognition that the initial standard policy section of the insurance agreement provides, *inter alia,* for coverages applicable only to policies issued in the State of Maryland. Such coverages would certainly have no application to the policy under consideration in this case, which was issued to the Appellant in Pennsylvania.

The declarations page of the policy indicates that the final part of the agreement, the endorsement section providing for Pennsylvania No–Fault coverage, is applicable with respect to the policy. The declarations page does not indicate any premium charge to the insured for any death benefit coverage, under the provision the Plaintiff relies upon in seeking a recovery in this action. The endorsement

itself specifically provides for the payment to survivors of the benefits which were furnished by the insurer. The endorsement does not provide for any entitlement by the insured to the death benefits set forth on page 6 of the initial standard policy part of the agreement. We find it significant that the same page and section of the standard policy part of the contract provides for the payment of medical expenses. However, the Pennsylvania No–Fault endorsement section sets forth different language regarding entitlement to medical payment coverage, and such terms were obviously intended to supplant the prior policy provisions dealing with the same subject.

Finally, in analyzing the Plaintiff's claim of entitlement to death benefits, we cannot ignore the following provision in the Pennsylvania No–Fault endorsement, in a section entitled "LIMITS OF LIABILITY":

> Regardless of the number of persons insured, policies or plans of self-insurance applicable, claims made or insured motor vehicles to which this coverage applies, the ERIE's liability for personal injury protection benefits with respect to bodily injury to any one eligible person in any one motor vehicle accident is limited:
>
> (a) for the named insured and any relative in the amounts indicated by the 1st digit of the "PIP CODE" shown on the Declarations page and explained on the Benefits Table which is on page 1 of this endorsement.

Based upon the foregoing, it is evident that the only benefits to which the Plaintiff is entitled, as a result of his wife's death, are those survivor's benefits set forth in the Pennsylvania No–Fault endorsement section of the policy, and not the different death benefits included in the initial standard policy section of the insurance agreement.

Thus, we agree with the conclusions reached by the trial court in this case. The insurance policy in issue is not ambiguous regarding the Plaintiff's lack of entitlement to the death benefits sought herein. Accordingly, we find no merit in this appeal.

The Judgment of the trial court is hereby affirmed.